[Civ. No. 5976. ˙Third Appellate District.—April 20, 1938.]

LATONEY ERNESTINA NADERHOFF, Respondent, v.
PRUDENCE MUTUAL LIFE INSURANCE ASSO-
CIATION (a Corporation), Appellant.

Charles H. Epperson for Appellant.

Gumpert & Mazzera and J. Calvert Snyder for Respondent.

PLUMMER, J.—The appellant in this action is a California Mutual Life Insurance Company organized under sections 452a–453 of the Civil Code, which sections are now supplanted by the Insurance Code of the state of California beginning with section 10,640.

On the 8th day of December, 1932, being at a time after the organization of said Mutual Life Insurance Association, August Naderhoff, then the husband of the plaintiff in this action, became a member of the appellant-association. The certificate issued to him was for the maximum sum of $2,000, with a provision contained therein that if death were accidental, the amount of recovery should be the sum of $3,000. Naderhoff was killed on the 16th day of October, 1935, in an automobile accident. Plaintiff began this action to recover judgment on the certificate mentioned, and obtained judgment thereon for the sum of $3,000. From this judgment the defendant appealed.

The complaint in the action sets forth the issuance of a membership certificate to August Naderhoff on the date mentioned; his death by accidental means; that the plaintiff is the beneficiary named in the certificate; that the insurance covenanted to be paid has not been paid; that demand has been made upon the defendant for the payment of said sum of $3,000, which has not been paid; and that the defendant has refused to pay the same or any part thereof.

The answer of the defendant, after setting out the terms and conditions of the policy and the by-laws of the association, which, by the terms of the certificate of membership became a part, and were made a part of the agreement between August Naderhoff and the association, then admits that Naderhoff during his lifetime performed all the conditions required to be performed by him, and that the plaintiff in this action has done so, save and except that the action in question was brought prematurely.

While the complaint in the action alleges that the defendant has refused to pay any part of the stipulated sum, there is nothing in the record in this case, or in any of the pleadings to the effect that the board of directors of the association ever approved or rejected the claim filed by the plaintiff for payment to her, under the terms of a membership certificate issued to her deceased husband, in which she was named as beneficiary.

The briefs indicate that a former trial was had of this action, but nothing as to the issues tendered in that action are disclosed by the record in this case. In the present action liability on the certificate of membership issued to August Naderhoff (now deceased), is not denied. One question raised is as to the application of the by-laws which are made a part of the certificate of membership issued to Naderhoff, in which the amount of the insurance to be paid is limited by the terms of the agreement, and the method of raising the money with which to make such payment; also, the question as to whether the action is in proper form, in that it should have been one in the nature of *mandamus* to compel a levying of an assessment to pay the Naderhoff claim in advance of the date when such an assessment was levied; likewise, an issue was raised as to whether the action was prematurely brought, there being a clause in the

agreement purporting to prohibit the beginning of an action prior to six months after the date of the death of a member.

■  Under the authorities called to our attention, and which we have considered, and the liability on. the certificate of membership being admitted, save and except as to the amount, it appears that *mandamus* to levy an assessment would have been the proper remedy, but owing to the fact that the pleadings in this case, after praying for a judgment of $3,000, contain a prayer for such other relief as may be meet and proper in the premises, the form of the action may be disregarded.

The record shows that some time after the beginning of this action the defendant did levy an assessment upon the members then liable for the purpose of raising money with which to make payment of the plaintiff's claim.  This levy was made within six months after the death of August Naderhoff.  The membership certificate issued to the deceased specifies that the Prudence Mutual Life Insurance Association insures the person designated as a member for the amount named therein, payable as specified, subject to the provisions, conditions and warranties printed on the back thereof, which were made a part of the contract as fully as though recited over the signatures thereto affixed.  The certificate then purports to insure the life of the deceased for the sum of $2,000.  The third paragraph raises this amount to the sum of $3,000, in the event of the death of the insured member, by accidental means, prior to his attaining the age of sixty years.  The plaintiff in this action is then named as the beneficiary therein.  The policy then provides for the levy of death assessments, limiting the amount of the assessment to the sum of $2.  All moneys received by reason of any death assessment were to be placed in the benefit fund of the association, otherwise known as the "mortuary fund".  The policy then provided that all death claims should be paid in the order in which they occur and are approved, in accordance with the by-laws of the association.  On the back of the policy there appeared certain terms by which the member bound himself to, and the parties signing the membership certificate constituted and made a part of the agreement, the articles of incorporation of the association, by-laws of the association, and all amendments thereto.  The by-laws provided that upon the death of a member of the association an assessment might be levied upon the surviving members

in a sum not exceeding $3. Heretofore, as appears from the record, the sum of the assessment appears to have been limited to $2, which probably is a clerical error in the preparation of the transcript.

Section 1 of article 14 of the by-laws directs that upon the death of a member in good standing, and satisfactory proof thereof, where filing a claim is necessary there shall be paid to the beneficiary as in full settlement of any such claim, a death benefit, the amount of which shall be determined as hereafter mentioned. The by-laws then provide for ascertaining and determining the amount to be paid, as follows, to wit:

"Provided, further, that the amount aforesaid to be paid is conditioned upon there being a sufficient number of members in good standing in the Association at the time of the death of said member to enable the death assessments so levied to produce, and which death assessment does actually produce, a sum sufficient to pay the amount aforesaid to be paid upon said certificate, or as mentioned in said policy, and provided, further, that if said death assessment shall be collected from members of the Association at the time of the death of such member, and is actually collected, or that the necessary amount to pay such certificate shall be in the mortuary fund of the Association, and should there be fewer members than may be necessary to produce the amount specified to be paid in the certificate and/or policy or actually collected by virtue of said death assessment, then the amount to be paid shall be reduced to the sum such assessment produced, less expenses attendant thereto."

It is further provided in the by-laws that death claims shall be paid exclusively from the mortuary fund. The agreement between August Naderhoff and the association, as shown by the findings of fact, was to the effect that all death claims under the policy would be paid in the order in which they occurred and were approved, in accordance with the by-laws of the association.

At the time of the death of August Naderhoff there was on hand in the mortuary fund of the association the sum of $6,250.07, but the court further finds that on the date of the death of August Naderhoff there were death claims pending against the association in excess of said sum. While not mentioned in the findings, the testimony shows that the

death claims pending against the association on the 16th day of October, 1935 (the date of the death of August Naderhoff), amounted to the sum of $44,500.

The court further finds that on the first day of April, 1936, the appellant levied an assessment against all its members in good standing as of October 21, 1935, to wit: Being of the number of 761, which assessment, being for three persons deceased, brought the association the sum of $2,747.85; that the association attempted to make distribution thereof, and tendered to the plaintiff, plaintiff's proportionate share thereof in the sum of $915.95. The court then finds that at the time of the death of August Naderhoff the plaintiff was entitled to her proportionate share of the mortuary fund then in the possession of the appellant, not stating the sum, which the evidence shows to be between $300 and $400 only. The court further finds that the prohibition against beginning a suit prior to six months after the date of the death of the deceased had been waived by the appellant.

The court further found that if an assessment, because of the death of August Naderhoff, had been levied within a reasonable time from and after the 21st day of October, 1935, upon the members in good standing, the defendant's association, subject to said levy, would have produced an amount in excess of a sum sufficient to pay the plaintiff's claim. Our attention has not been called to any testimony, nor have we found any testimony in the transcript supporting such finding.

In an attempt to raise money by assessments for the purpose of paying the death claims preceding the death claim filed by the plaintiff in this action, and having precedence thereof, the association levied a number of assessments for the purpose of discharging the claims which we have stated totaled the sum of $44,500. Upon these assessments there was realized the sum of $25,800, which became a part of, and was paid out of the mortuary fund. This testimony, so far as it bears upon the ability of the association to raise money by assessments, shows a rapid lessening of such ability, and likewise the testimony shows a rapid falling off in the membership of the association. Just when the membership declined from approximately 1900 on or about the 1st of October, 1935, to 761 at the time an assessment was levied covering the Naderhoff claim, does not appear.

The legislature in 1935 repealed the sections of the Civil Code under which the association had been formed, and enacted a comprehensive scheme for the government of mutual associations, beginning with section 10,640 of the Insurance Code. Subdivision (d) of that section reads as follows:

"The member's liability to contribute to the payment of losses accrued, or to accrue, is not a fixed sum, but is dependent upon the amount needed to pay such losses in full as they arise during his membership. Such liability does not cease upon lapsation of such membership."

As the law now stands the liability of a member does not terminate upon the lapsing of membership, but does depend upon the fact of death of a member during the membership of the person called upon to pay. The former provisions of the Civil Code contained nothing to this effect. Upon the lapse of one's membership in the association there appears nothing in the code provisions which would charge such former member with liability for payment on account of death occurring during his membership. By the provisions of section 10,640, *supra*, new members are not charged with liability for the payment of death claims where the death occurred prior to such person becoming a member of the association.

The reorganized plan for the conducting of such mutual associations provides for the accumulation of certain funds. These funds are trust funds, and we need not cite authorities to the effect that trust funds cannot be diverted to purposes other than those for which the funds are collected. Thus, moneys contributed by persons who have become members of the association under the revised plan subsequent to the death of Naderhoff cannot be applied in extinguishment of the plaintiff's claim.

No issue is raised by the pleadings in this action calling for a judgment in the way of damages for any alleged negligence on the part of the board of directors of the association in not levying an assessment to cover the Naderhoff claim prior to the 1st day of April, 1936. Being a mutual association, and the funds contributed and collected for certain purposes, any damages which the plaintiff may have suffered by reason of the negligence of the board of directors cannot be recovered from the association. Such damages, if any,

would constitute the personal liability of the board of directors.

Upon a mutual contract of insurance, as well as upon any ordinary contract, the rights of the policyholder and the liability of the insurer, depend upon the wording of the contract. (*Boyer* v. *United States Fidelity & Guar. Co.*, 206 Cal. 273 [274 Pac. 57]; *Taketa* v. *Policyholders' Life Ins. Assn.*, 131 Cal. App. 551 [21 Pac. (2d) 646].) Thus, the amount to be paid, and the method of raising the money, depends upon the terms of the contract.

In 37 C. J. 412, the rule is thus set forth: "In a case of assessment life insurance the amount of liability will depend upon the terms of the contract. Under some contracts there may be a recovery only of the amount not exceeding a certain sum actually realized on an assessment, while under other contracts there may be a recovery of the amount which a certain assessment on the members would realize if made, regardless of whether or not it is in fact made and collected."

In 45 C. J., beginning on page 231, section 182, the liability of an insurance company upon the various terms appearing in the contract is set forth as follows:

"The amount of benefits which the society is liable to pay in a given case depends on its charter of incorporation or articles of association, its constitution and by-laws, and the terms of the certificate of insurance. Where there is no regular certificate, the amount payable is not such amount as the jurors' consciences may approve as just, but the amount provided for in such a case by the charter and by-laws of the association. By its constitution and by-laws the society may obligate itself to pay a sum certain specified in the certificate, or to pay the proceeds of an assessment, or a certain percentage thereof, collected from the whole membership; or the amount may be limited to the proceeds of an assessment levied against a particular class or group of members. So the amount of benefits may be made to depend on the number of members in the society, or in a particular class thereof, at the time of the member's death, irrespective of the amount specified in the certificate, and regardless of whether all such members had paid their assessments; or the amount may even be made to depend on the amount of a specified sum on hand at the time the member dies. The right to benefits according to the particular class to which the

member belonged, cannot be affected by the wrongful rejection of a member from, or by the abolition of, that class. A contract to pay a certain endowment is not invalidated as unconscionable because of the fact that the member is required to pay only a much smaller sum by way of assessments. Where a society's charter provides what disposition is to be made of the fund due from the society on account of membership such provision governs in preference to the will of the member, and the widow can recover no more than the share provided for widows, notwithstanding the terms of the member's will gave her a larger share. The difference in the age of the member and the age stated in the application will be taken into consideration in determining the amount to which the beneficiary is entitled.''

Following the rule laid down in the Taketa case, *supra,* and the authorities just cited, the liability of the appellant depends upon the amount of money raised upon an assessment to pay a death claim, and is limited by such amount.

In 45 C. J. 18, we find the following:

''A beneficiary cannot seek to recover on a certificate, and at the same time repudiate it by asserting the invalidity of a provision limiting the liability of the society.''

The validity of a provision in the by-laws of the association which became a part of the agreement between Naderhoff and the association, limiting the amount to be paid on the certificate to the amount actually collected by an assessment levied for the purpose of raising money to pay a death claim based thereon, is further supported by the following cases: *Canfield* v. *Knights of Maccabees,* 87 Mich. 626 [49 N. W. 875, 24 Am. St. Rep. 186, 13 L. R. A. 625] ; *Pool* v. *Brotherhood, etc.,* 143 Cal. 650 [77 Pac. 661].

It further appears that in levying assessments for the payment of death claims by the association, it became necessary to space the levies so that the membership might not wholly abandon the type of insurance issued by the association and leave the association with no membership.

It is also shown by the testimony that the membership was falling off very rapidly, and the amounts realized by the different assessments were becoming considerably lessened. That the board of directors of an association act somewhat judicially, and necessarily must take into consideration the financial status of the association and the response of the

members to the assessments as levied, appears to be supported by the following cases: *Pencille* v. *State F. M. H. Ins. Co.*, 74 Minn. 67 [76 N. W. 1026, 73 Am. St. Rep. 326]; *Barrows* v. *Mutual Reserve Life Ins. Co.*, 151 Fed. 461, and cases there cited.

Under the state of the record we do not need to decide whether the association should have prorated the amount of money in the mortuary fund at the date of the death of the deceased, and settled the plaintiff's claim for a much less figure than the sum collected by an assessment for that purpose; nor do we need to decide whether the action should have been by way of *mandamus* to require the board of directors of the association to levy an assessment at an earlier date.

The complaint, while in an action asking for a money judgment in the sum of $3,000, also contains a provision in effect praying for such other and further relief as may seem just and proper. The association having levied an assessment, and having obtained the sum of $915.95, available for payment of the plaintiff's claim in accordance with the provisions of the agreement between Naderhoff and the association, it follows that we may properly modify the judgment as entered against the association by striking therefrom all of the sum allowed by the court in excess of $915.95. And it is so ordered.

The trial court is directed to modify the judgment as heretofore entered, and enter a new judgment allowing the plaintiff the sum of $915.95, and as so modified the judgment is affirmed.

It is further ordered that the parties hereto pay their own costs on this appeal.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 20, 1938, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 17, 1938.