## HALL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3126.

Circuit Court of Appeals, Tenth Circuit.

July 2, 1945.

Angus M. Woodford, of Holdenville, Okl., for petitioner.

John F. Costelloe, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson, and Newton K. Fox, all of Washington, D. C., on the brief), for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Applying the rule in Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, the precise question presented here is whether there is "warrant in the record and a reasonable basis in the law" for the judgment of the Tax Court holding income from a family trust, created by the taxpayer for the benefit of his four daughters, taxable to

him as donor under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 22(a), as construed and applied by Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788, and subsequent decisions of this and other courts. There is no dispute concerning the facts as found by the Tax Court, and they may be summarized as follows:

On December 28, 1940, the petitioner, Joel E. Hall, an Oklahoma oil man, who estimated the value of his estate in 1941 at $350,000, and of his wife at $100,000, created an irrevocable trust, naming his four daughters beneficiaries. At that time, the ages of the beneficiaries were 20, 19, 17 and 14 respectively. The trust was created by the petitioner transferring to himself as trustee certain oil and gas producing properties having an aggregate value of $35,000, and subsequently other producing properties valued at $25,000. The trust provided that the petitioner as trustee should hold and manage the properties involved and collect the proceeds therefrom. After deducting the necessary and ordinary expenses of the trust, the trustee was specifically authorized to distribute all of the income from the trust to the beneficiaries "in equal shares at any time in the discretion of the trustee," and in addition to the income the trustee was empowered at any time during the continuance of the trust to expend from the principal or income any sums reasonably necessary for the education and maintenance of the beneficiaries, and for the "purpose of defraying the expense of illness, emergency or other extreme misfortune."

The trust further provided that in the event of the demise of any of the named beneficiaries prior to the full distribution of the trust estate, the share of such beneficiary should be held for the use and benefit of her issue in equal parts under the same conditions, to be expended in their behalf in the sole discretion of the trustee until the termination of the trust. In the event, and only in the event, of the death of all beneficiaries without issue, the trust estate was to descend to the trustor, or his wife if she survived. The trustor's wife was designated as successor trustee if he died prior to the termination of the trust, and in the event of the death of both, other successor trustees were named. The trustee, or his wife as immediate successor, was granted "unlimited powers of investment, contract, compromise, sale, lease and otherwise. It being the intent of the trustor to grant the trustee the same power to deal with the property as trustee as the trustor has heretofore had with one limitation only." But all other successor trustees were limited in their powers of investment of trust funds to government bonds and real estate mortgages on city property in amounts not to exceed 40% of the actual value at the time of investment. Neither the trustee nor his wife as successor trustee was to receive any compensation for their services, and all other successor trustees were to receive 10% of the net income from the trust property. At the expiration of fifteen years, the trust terminated, and the trustee was directed to pay over and distribute to the beneficiaries all the undistributed trust assets.

The approximate annual income from the trust for the years 1940, 1941 and 1942 was $10,000 to $12,000. The petitioner kept separate books for each of the beneficiaries; he never used or borrowed any of the trust funds for himself, and did not expend any of it for the maintenance and education of the beneficiaries. The only withdrawals against the trust during 1941 were two checks issued by the trustee for the purchase of Series E Government Bonds in the amount of $750 for each of his two eldest daughters. The bonds were purchased in their names and kept in the petitioner's lockbox.

For the taxable year 1941, petitioner filed his individual income tax return and separate returns for each of the beneficiaries. The Commissioner determined that the income from the trust was taxable to the petitioner individually and assessed a deficiency accordingly. On petition for review to the Tax Court, the petitioner apparently conceded that the portion of the trust income attributable in equal shares to his two minor children was taxable to him individually, but contended that the portion of the trust income allocable in equal shares to his two adult children was taxable to them as separate income.

Applying the test "whether the rights of the petitioner in and to the trust corpus and the income therefrom are such as to constitute the income his income within the meaning of Section 22(a)," the Tax Court held that taking into account the family relationship, the only practical result of the trust was to effect a division of the income of petitioner for income tax purposes. The Court reasoned that although

the possibility of reverter was "rather remote," yet petitioner did have discretionary power to distribute or withhold the income; to invade the principal for the purpose of educating and maintaining the children, or for defraying the expenses of illness or other extreme misfortune, and also retained for himself and his wife as successor trustee the power to use the trust property in his oil well drilling ventures, or in any venture in which he or any one else might be engaged, while denying that power to all other successor trustees. In view of these controls the Court, quoting from the Clifford case, observed that it is "'hard to imagine that * * * (petitioner) felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact.'"

 As we have said, the pertinent facts in our case are not in dispute, nor is the abstract principle of law in doubt— we have only the application of stated facts to a settled and accepted rule of law. Whether that process is judicial in the sense that it is open to review on appeal from the Tax Court, or merely a factual finding binding here, is open to some doubt. See Dobson v. Commissioner, supra.[1] Following the admonitions in the Dobson case, we said in Armstrong v. Commissioner, 10 Cir., 143 F.2d 700, 701, that "the finding by the tax court that petitioner in substance was the owner of the trust property is in our view not a finding of fact but a conclusion of law, and the decision in the case turns upon the correctness of that conclusion"—this for the obvious reason that taxability turns directly upon the answer to that question. It would seem therefore that whether there is "warrant in the record and a reasonable basis in the law" for the legal conclusion of the Tax Court, based upon undisputed facts, is a judicial question committed to this court for review. Bingham's Trust v. Commissioner, 65 S.Ct. 1232. At least if we have any real function or province in connection with the statutory review of this class of cases, it must relate to the process of applying known and accepted facts to legal concepts. Cf. Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171. Of course we accord great weight to the expertness of the Tax Court in a specialized field, but the strong dissent in this case clearly demonstrates the contrariety of views among judges of that Court concerning the application of varying facts to the recognized principle of law. See also Scherer v. Commissioner of Internal Revenue, 3 T.C. 776.

 The sweep of Section 22(a), as construed by the courts, is based upon the legislative purpose to tax "* * * gains or profits and income derived from any source whatever." Few judges or courts longer deny the soundness or the salutary effect of the Clifford doctrine as the effectuation of that Congressional purpose, but as in all cases involving the drawing of lines based upon factual variations, the difficulty arises when we come to apply the facts to the law in arriving at our legal conclusion. Our conclusion in each case must rest upon the thesis that "economic gain realized or realizable by the taxpayer is necessary to produce a taxable income under our statutory scheme." Helvering v. Stuart, 317 U.S. 154, 168, 63 S.Ct. 140, 148, 87 L.Ed. 154. And that the power to command the trust income is equivalent to the taxable enjoyment thereof. Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. See also Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Mertens, Law of Federal Income Taxation, Sec. 18.02.

 While we may ignore the technical niceties of the law of trusts in the determination of what constitutes the realization of taxable gain under Section 22(a), Helvering v. Clifford, supra; Losh v. Commissioner of Internal Revenue, 10 Cir., 145 F.2d 456, we may not ignore that which Congress has recognized unless fully justified by the realities of the particular case. By Sections 161, 162, 166, and 167 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, §§ 161, 162, 166, 167, Congress has distinctly recognized a trust as a separate taxable entity, and has provided for the imposition of a tax on the trust income as such. The statute in meticulous detail has specified the conditions on which trust income is taxable to the donor, and the specifications contained in Sections 166 and 167 do not by their terms deny the right of a father to create a trust for the benefit of his family, and to retain unto himself broad powers of management and control over the corpus and income so long as he

---

[1] See also The Strange Ways of Law and Fact, Randolph E. Paul, 57 Harv.Law Rev. 753.

does not retain the power to revest the corpus or revert the income to his own economic benefit. See Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed 796. But the Clifford doctrine is admittedly a judicial extension of the statutory standards for the determination of the question of ownership of trust income for tax purposes. Jones v. Norris, 10 Cir., 122 F.2d 6.[2] Although the Clifford case avoided the recognition of a trust for income tax purposes under Sections 161, 166 and 167, it did not repudiate the family trust as a separate taxable entity. See also Helvering v. Stuart, supra. It did however lay emphasis on family solidarity as a circumstance which called for close scrutiny in the determination of the question whether the donor-trustee should be treated as the real owner for purposes of taxation. The Supreme Court in the Stuart case, and this court in Hogle v. Commissioner of Internal Revenue, 10 Cir., 132 F.2d 66, held that trust income which, under the terms of the trust could be used to discharge the parental obligations of the donor-trustee to his minor children beneficiaries, was taxable to him individually. But Congress by Section 134 of the Revenue Act of 1943, subsection (c) Internal Revenue Code, section 167, 26 U.S.C.A. Int.Rev. Code, § 167(c) promptly repudiated this treatment of Sections 22(a) and 167, by providing retroactively that merely because trust income could in the discretion of the grantor-trustee be applied to the support and maintenance of a beneficiary whom the grantor was already legally obligated to support, is not taxable to him except to the extent that such income was so applied or distributed. See Merten's, Sec. 37.21, 1944 Supp.

We have said that broad and unlimited powers of management reserved to the donor-trustee of a family trust, do not necessarily spell taxable ownership of trust income under Section 22(a), unless by such controls he is enabled to realize the economic benefit therefrom. Jones v. Norris, supra; Armstrong v. Commissioner of Internal Revenue, 10 Cir., 143 F.2d 700. In that connection, it has been held that the power to shift the income from one beneficiary to another is the realization of economic gain within the statute. Commissioner of Internal Revenue v. Buck, 2

Cir., 120 F.2d 775; Helvering v. Elias, 2 Cir., 122 F.2d 171, certiorari denied 314 U.S. 692, 62 S.Ct. 361, 86 L.Ed. 553; Warren v. Commissioner of Internal Revenue, 45 B.T.A. 379, affirmed 6 Cir., 133 F.2d 312; Brown v. Commissioner of Internal Revenue, 3 Cir., 131 F.2d 640, certiorari denied 318 U.S. 767, 63 S.Ct. 760, 87 L. Ed. 1138; Stockstrom v. Commissioner, 3 T.C. 255, affirmed 8 Cir., 148 F.2d 491. See also Miller v. Commissioner of Internal Revenue, 6 Cir., 147 F.2d 189.

■ The Tax Court cited the Buck case, supra, as applicable to the powers of control and management retained by the trustee in this case, and to bring it within the rationale of that case, appellee argues that the trustee was empowered "to shift the income among the various beneficiaries under broad administrative powers over the trust corpus and income". But we can find no such powers in a trust instrument which specifically provides that all of the net income from the investments made by the trustee "may be distributed to the beneficiaries * * * in equal shares at any time in the discretion of the trustee." Cf. Small v. Commissioner, 3 T.C. 1142. In our case the trustee was authorized in his discretion to withhold the distribution of income, but he could not shift it from one beneficiary to another —nor could he hold it during his lifetime or the lifetime of the beneficiaries as in the Stockstrom and Miller cases, and cases cited therein. The trustee could not change the beneficial interest of the beneficiary; he was not authorized or empowered to "reduce or obliterate" the share of principal or interest originally allocated to any of the beneficiaries. At the expiration of the trust, fifteen years from the date of its execution, the corpus and economic income must be distributed to the beneficiaries or their issue. It is only on the remotest contingency that the trustor could be revested with either the corpus or the income. Cf. Leonard v. Commissioner, 4 T.C. 1271; Stuart v. Commissioner, on remand from the Supreme Court, 2 T.C. 1103; McCutchin v. Commissioner, 4 T.C. 1242.

■ It was the intention of the trustor to grant to himself as trustee the same power to deal with the trust property as

---

[2] Cf. Clifford case and the Wood case, decided the same day in opinions by Justice Douglas, who pointed out the distinction between taxability under Sections 166 and 22(a).

he possessed before the establishment of the trust, and it may be argued that this unusual grant of power enabled the trustee to invest the trust funds for his personal advantage and benefit, thereby vitiating the trust entity and realizing the economic gain necessary to produce a taxable income under Section 22(a). It may be conceded that the power to invest trust funds for the trustee's personal advantage and benefit is equivalent to the taxable enjoyment of the trust income, but we cannot say that the absolute power of the trustee to deal with the trust property as if it were his own empowers him to use it for his own personal advantage and gain. Such a construction of the trust instrument would be contrary to the fundamental principles of equity which guide trustees and protect trust property. In the language of Justice Cardozo in Carrier v. Carrier, 226 N. Y. 114, 123 N.E. 135, 138: "His discretion was to be 'absolute and uncontrolled.' That does not mean, however, that it might be recklessly or willfully abused. He had made himself a trustee; and in so doing he had subjected himself to those obligations of fidelity and diligence that attach to the office of trustee. He had power to 'invest' the moneys committed to his care. He had no power, under cover of an investment, to loan them to himself. His discretion, however broad, did not relieve him from obedience to the great principles of equity which are the life of every trust * * *." See also Estate of Lowenstein, 3 T.C. 1133.

We should not place a construction upon a trust instrument which would impute culpability to the trustee, nor destroy the trust instrument itself unless no other construction is permissible. We think that the expressed intention, when considered in the light of his conventional trust obligations, put the trust property beyond his power to reap more than the satisfaction of administering property which he had conveyed in trust for the benefit of his daughters in accordance with the business judgment he had exercised in the accumulation of it. In the trust instrument, the trustor specifically expressed an intention to provide his children with an individual income for the purpose of protecting them against the hazards of his business operations, and to that end to create an irrevocable trust for their use and benefit, and we cannot say that his administrative powers negative that intention. When viewed in this light, we are of the opinion that there is no reasonable basis for the judgment of the Tax Court and same is reversed.

BRATTON, Circuit Judge, is of the opinion that the decision of the Tax Court should be affirmed.