## GAYLORD v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### No. 10936.

Circuit Court of Appeals, Ninth Circuit.
Jan. 30, 1946.

Thomas A. J. Dockweiler, of Los Angeles, Cal., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, Helen Goodner, and Muriel S. Paul, Sp. Assts. to the Atty. Gen., for respondent.

Before STEPHENS, BONE, and ORR, Circuit Judges.

BONE, Circuit Judge.

These are proceedings for review of a decision of the Tax Court determining against petitioner, George S. Gaylord (hereafter called Mr. Gaylord), certain deficiencies in his income taxes for the taxable years 1936, 1937, 1938 and 1939 and against Gertrude H. Gaylord (hereafter called Mrs. Gaylord) certain deficiencies in her income taxes for the taxable years 1936, 1937 and 1939. Since prior to 1936 both petitioners have been residents of Pasadena, Cal. They are husband and wife and as such filed with the Collector of Internal Revenue at Los Angeles, Cal., their respective individual returns of the income taxes with respect to which such deficiencies were so determined. The Tax Court consolidated the two cases for hearing and they were heard together. After the decision by the Tax Court, and before filing his petition for review here, Mr. Gaylord paid certain sums on deficiencies so found against him for 1937, 1938 and 1939, and the original claimed amount of deficiencies is reduced for these years by the amounts so paid.

The Commissioner states the questions presented to us to be (a) whether, under Section 166 of the Revenue Acts of 1936 and 1938 and the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 166, trust income is taxable to the two taxpayers because the trust in question was revocable by them under California law; or (b) under Section 22(a) of the Revenue Acts of 1936 and 1938 and the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a), because they retained such powers over the trust corpus as to remain in substance the owner thereof and of the income; or (c) in the alternative, whether one-half of the trust income for 1936 and the first five months of 1937 is taxable to taxpayers under Section 167 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 895, because that part of the income could, under the trust instrument, have been used to discharge their legal obligations to support their minor daughter. Also, whether under the facts the Commissioner is estopped to assert deficiencies in income taxes for 1936-1939, inclusive, against these taxpayers. Also presented by the Commissioner is the question as to whether the findings of the Tax Court as to fair market value of Menasha stock upon acquisition in 1917, which value determines the *basis*

for computing gain on the Marathon stock sold in the taxable years by taxpayers individually and as trustees for the Gaylord trust is supported by substantial evidence.

Taxpayers have two daughters, one born on November 10, 1905, and the other on May 31, 1916. Both daughters are married and have children of their own. Prior to September, 1935, taxpayers decided to create a trust for the benefit of these two daughters. On December 11, 1935, the taxpayers signed and acknowledged a declaration of trust (dated November 7, 1935) in which they were named jointly as trustee. There was no provision relating to whether the trust was revocable or irrevocable but when they signed the trust instrument they were advised by counsel that the trust was irrevocable, and the Tax Court so found respecting this advice. There can be no doubt that this was the intent of the trustors. The trust was declared with respect to 7,000 shares of the common capital stock of Marathon Paper Mills Company, 5,000 shares of which were contributed by Mr. Gaylord and 2,000 shares by Mrs. Gaylord.

On February 4, 1936, taxpayers filed gift tax returns, prepared by Mr. Gaylord, for the year 1935. In these returns, they reported the creation of an irrevocable trust and the transfer thereto of the Marathon stock. This stock was placed in a safe deposit box in California and remained there until it was sold, some in each of the years 1936 through 1939. The last of the stock was sold in 1939. The proceeds of all such sales were deposited in a Chicago bank in the name of taxpayers as trustees.

Taxpayers recorded the trust instrument in the office of the county recorder of Los Angeles County, Cal., on September 23, 1937. In 1938, the trustees purchased $90,000 of real estate situated in Texas and recorded the trust instrument in four counties in that State.

For each of the years 1936 through 1939, the trustees filed a fiduciary income tax return for the trust, in which each daughter was shown as a trust beneficiary, entitled to one-half of the income thereof. In each of these years the two daughters filed income tax returns in which they reported as taxable income received from the trust the amounts shown by the fiduciary returns as having been distributed to them during the respective years.

At the instance of their counsel, taxpayers, on March 27, 1940, signed and acknowledged an instrument dealing directly with the original declaration of trust.[1] This instrument, so executed on March 27, 1940, was clearly intended to relate back to the original instrument creating the trust, and, to the extent indicated, apparently to clarify it and make it reflect the claimed original intent and desire of the trustors with respect to irrevocability.

The Commissioner insists that the *intention* of the taxpayers at the time they created the trust in 1935 did not make it

[1] "Declaration Being a Part of a Certain Declaration of Trust Dated November 7, 1935

"Know All Men by These Presents:

"That Whereas the undersigned, George S. Gaylord and Gertrude H. Gaylord, his wife, of the City of Pasadena, in the County of Los Angeles, State of California, do in and by an instrument of even date herewith entitled Declaration of Trust certify and declare and in and by said instrument have certified and declared that they hold and shall and will hold the following described personal property, to-wit: seven thousand (7,000) shares of the common capital stock of Marathon Paper Mills Company, a Wisconsin corporation, of the par value of Twenty-five Dollars ($25.00) per share, and any and all proceeds thereof, In Trust, Nevertheless, for the uses and purposes and upon the terms and conditions set forth in said Declaration of Trust, reference to which Declaration of Trust is hereby made for fur-

ther particulars thereof: Now, Therefore, said George S. Gaylord and Gertrude H. Gaylord do further certify and declare that the trust created and provided for in said Declaration of Trust was always intended and is intended by said trustors and trustees, George S. Gaylord and Gertrude H. Gaylord, to be and is and shall always be absolutely irrevocable and that this further declaration of said undersigned is and is intended to be and shall always be a part of said Declaration of Trust and is intended to be and shall always be taken with and construed as a part of said Declaration of Trust the same as though this present declaration had been physically incorporated in said Declaration of Trust.

"In Witness Whereof, said George S. Gaylord and Gertrude H. Gaylord, said trustors and trustees, have set their hands and seals to this instrument *as of* this 7th day of November, 1935, at Pasadena, California." [Emphasis supplied]

irrevocable since Section 2280 of the Civil Code of California provides otherwise.[2] He also further insists that "the mere fact that the trust instrument *could* have been reformed or amended to state that it was irrevocable does not suffice, since it was neither reformed nor amended *in the taxable years*." (Emphasis supplied.) His position is that the subsequent amendment in 1940, supra, did not cure the defect in the trust instrument in the earlier years, from which the power to revoke was derived; that statements in the taxpayers' gift tax returns for 1935 that the trust was irrevocable also fail to meet the requirements of Section 2280 that the statement as to irrevocability be contained in the trust instrument. Cf. on the effect of such a declaration intended to have a retroactive effect, Jurs v. Commissioner, 9 Cir., 147 F.2d 805.

Respondent Commissioner contended before the Tax Court and here contends that during the four-year period involved, the trust was revocable by Mr. and Mrs. Gaylord, or either of them, and, consequently, under the statutory provisions, supra, all income of the trust for those years (which had been distributed to the two beneficiaries, as indicated) constituted income for Mr. and Mrs. Gaylord in the relative proportion of their respective contributions to the original corpus of the trust. On the contrary, petitioners contend, now and through all of these proceedings, that the trust is and has always been irrevocable and that none of its income was ever taxable to either Mr. or Mrs. Gaylord.

It will simplify the issues here to restate them in the language of the briefs. Petitioners declare that the assignments of error and points on appeal present "only two principal questions for review. (A) Whether the trust referred to was revocable, and (B) What was the correct basis for computing gain on the sales of the Marathon Paper Mills Company common stock." In argument here, counsel for petitioners assured us that the most important question was the first one. The Commissioner's position is set forth in the second paragraph of this opinion.

According to its terms, the trust is to last as long as either of the two daughters is living and under 30 years of age, and during its existence all of the trust's net income is to be distributed, in any event annually to them, or, in case of the death of either of them leaving lawful issue, the latter. Upon termination of the trust its estate vests in the two daughters or, if either of them fail to survive such termination, her lawful issue who may then be living. (The maximum duration of this trust was for a period of about 10½ years but it could terminate earlier.) Although the declaration of trust contained no statement that it was irrevocable, no right to change or revoke the trust was reserved.

A reading of the record reveals that the trust here created was a family trust and the income was retained in the family group. See Com'r v. Wilson, 7 Cir., 125 F.2d 307, 310; Miller v. Com'r, 6 Cir., 147 F.2d 189; Com'r v. Berolzheimer, 2 Cir., 116 F.2d 628; Hall v. Com'r, 10 Cir., 150 F.2d 304. Nothing in the record forbids the conclusion that grantors had substantial income in each year aside from this trust property. Cf. Stockstrom v. Com'r, 8 Cir., 148 F.2d 491; Com'r v. Buck, 2 Cir., 120 F.2d 775; George v. Com'r, 8 Cir., 143 F.2d 837. Grantors named themselves as trustees and retained the power to name successor trustees. They retained powers of management and control over the trust corpus as though they were absolute owners. They could hold securities in their own names, invest and re-invest the corpus, lend it, sell it, exchange, lease or mortgage, all at prices and upon such terms as they deemed advisable. Their discretion was absolute and uncontrolled and its exercise conclusive on all persons. See Section 2269, Civil Code of California. See also Cox v. Com'r, 10 Cir., 110 F.2d 934, certiorari denied, 311 U.S. 667, 61 S.Ct. 26, 85 L.Ed. 428; Rollins v. Helvering, 8 Cir., 92 F.2d 390, certiorari denied 302 U.S. 763, 58 S.Ct. 409, 410, 82 L.Ed. 592, 593; White v. Higgins, 1 Cir., 116 F.2d 312. See also Stockstrom v. Com'r supra. The grantors here could vote the stocks forming the corpus of the trust and otherwise deal with them as an absolute owner. For comment on this

[2] "Sec. 2280. Revocation of trusts. Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected hereby. (Enacted 1872; Am. by Stats.1931, p. 1955.)"

sort of economic control see Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788; Miller v. Com'r, 6 Cir., 147 F.2d 189; Stockstrom v. Com'r, supra; Hall v. Com'r, supra; Bush v. Com'r, 2 Cir., 133 F.2d 1005; Williamson v. Com'r, 7 Cir., 132 F.2d 489, McKnight v. Com'r, 8 Cir., 123 F.2d 240; Com'r v. Buck, 2 Cir., 120 F.2d 775. Grantors had the whole title to the property, legal and equitable, the beneficiaries having only the right to enforce the performance of the trust. They had the power under California law to revoke the trust, and thus retake the corpus. Cf. White v. Higgins, 1 Cir., 116 F.2d 312. Although the income was distributable annually to the beneficiaries, the trustees could control the amount of income to be distributed. They could reduce, or even cut off, all income by exercising their powers to sell the corpus, and reinvesting in nonincome producing property; or by leasing the real property, acquired later, for little or no consideration; or by using their broad powers in other ways. The trust also included spendthrift provisions; the beneficiaries therefore had no rights of ownership in or control over trust income until it was actually distributed.

 One-half of the income could have been used in the years 1936 and until the younger daughter's marriage in 1937, to discharge the grantors' obligation, under Sections 196 and 197, Civil Code of California, to support their younger daughter who was not of age when the trust was created. Section 25, Civil Code of California. This power would have enabled them to use the income directly for their own economic benefit. Cf. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 101 A.L.R. 391. Upon termination of the trust, all of the trust estate then existing was to vest in the two principal beneficiaries (or their issue) share and share alike. But in making distributions the trustees had the sole judgment and discretion to make divisions and allotments and to determine the relative values of the property, their acts to be conclusive on all interested persons. By this control over valuation and distribution, the trustees could in effect vary the shares of the beneficiaries and indeed could distribute substantially the whole corpus to one beneficiary of their choosing. See Hall v. Com'r, supra, 150 F.2d 307.

Retaining this plenary power to control the ultimate distribution of the trust fund is an attribute of ownership. Upon termination of the trust, there was a possibility that the trust corpus would revert to Mrs. Gaylord and therefore she, as grantor, retained a remote interest in the corpus. This fact may be considered under Section 22 (a), supra. See Miller v. Com'r, supra, and cf. John E. Gallois et al. v. Com'r, 9 Cir., 152 F.2d 81; Fidelity Co. v. Rothensies, 324 U.S. 108, 111, 65 S.Ct. 508. See also Hall v. Com'r, supra, 150 F.2d page 307 and cases cited.

██ The fact that taxpayers may not necessarily become repossessed of the corpus and the income does not militate against the conclusion that they have the powers of an owner since it is sufficient if they control the family purse strings. See Stockstrom v. Com'r, supra; George v. Comr., supra; Williamson v. Com'r, supra, and cf. Helvering v. Stuart, supra. Nor is the fact material that the powers are reserved as trustee rather than as grantor, when trustee and grantor are the same. In the Helvering v. Clifford case, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, the donor's powers of control were reserved to himself as trustee and this has been true in other cases also. Foerderer v. Com'r, 3 Cir., 141 F.2d 53; Stockstrom v. Com'r, supra; Miller v. Com'r., supra; Hall v. Com'r, supra. See Article 166-1 of Treasury Regulations 94 and 101, and Section 19.166-1 of Treasury Regulations 103.

Cases where this court has had occasion to pass on the scope of Section 22(a), supra (see references to this Section at end of this opinion), in connection with trust income, have not been called to our attention by counsel. But for cases applying the rule of Helvering v. Clifford, supra, in other fact situations, see Stockstrom v. Com'r, supra; Miller v. Com'r, supra; Com'r v. Buck, supra; White v. Higgins, supra; Losh v. Com'r, 10 Cir., 145 F.2d 456; Hall v. Com'r, supra; Williamson v. Com'r, supra; Whiteley v. Com'r, 3 Cir., 120 F.2d 782, certiorari denied 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527. See also "Studies in Federal Taxation", Third Series by Paul, pp. 166 et seq. See also Central Nat. Bank of Cleveland v. Com'r, 6 Cir., 141 F.2d 352, 153 A.L.R. 542, where power to direct investments was a pivotal factor involving application of the rule in the Clifford case.

We are of the view that the trust in this case was, under Section 2280, California Civil Code, a revocable trust and we so hold. With grantors thus having power to revoke (in the period here involved) they could thereby revest title in themselves, within the meaning of Section 166 of the Revenue Acts of 1936 and 1938.[3] The mere existence of the *power* to revoke is sufficient to tax the income to the grantor. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. The words of the statute, 166 supra, are broad and include any power to revest title in the grantor, without the necessity of inquiring into the *source* from which that power is derived. It is not limited to cases where the power is derived from the express terms of the trust instrument. Pulitzer v. Com'r, 36 B.T.A. 964. From Helvering v. Stuart, supra, it is clear that the existence of a power in the grantor to revoke or revest title in himself is to be determined *from state law*. Cf. Howard v. United States, 5 Cir., 125 F.2d 986. See also Com'r v. Allen, 3 Cir., 108 F.2d 961, certiorari denied 309 U.S. 680, 60 S.Ct. 718, 84 L.Ed. 1023; Hughes v. Com'r, 9 Cir., 104 F.2d 144, 147; Section 2280 Civil Code of California, note 2. See also comments on this Code section in "Studies in Federal Taxation", Third Series, Paul, p. 190. The trust instrument here contained no statement (during the taxable years) that it was irrevocable.

Taxpayers insist that under the rule in Touli v. Santa Cruz County Title Co., 20 Cal.App.2d 495, 67 P.2d 404, 406, the trust was not a "voluntary trust" under Section 2280, California Civil Code. There the court construed that section as not applying to trust deeds which are akin to mortgages given to secure debts. It said that the word "voluntary" (in Section 2280) was used in the "restricted sense of a trust created freely and without a valuable consideration or legal obligation" and not as defined in Section 2216 of the California Civil Code which provides that "a voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another" (Enacted 1872) But cf. Fernald v. Lawsten, 26 Cal.App.2d 552, 79 P.2d 742, which seems to construe the word "voluntary" in Section 2280 as having the same meaning as in Section 2216 (see page 559 of 26 Cal.App.2d, 79 P.2d 742). And cf. Hughes v. Com'r, supra. In light of the record we cannot agree with taxpayers that the trust "is not voluntary because it is grounded in a valuable consideration and on an agreement between the trustors made with such consideration". They cite Aden v. City of Vallejo, 1903, 139 Cal. 165, 168; 72 P. 905, 906, to emphasize their contention that "good consideration" as employed in this (2280) section is not used in the ancient technical sense, as that of blood or natural affection, but as the equivalent to the term "valuable consideration". This, they contend, is the ultimate test.

We do not agree for the reason that the trust here created was a voluntary trust. It was the free act of the grantors and not affected by any form of compulsion. It reflected their desires to make a gift to their daughters to provide them with financial security. There was no legal or moral obligation to provide for the older daughter who was 30 years old when the trust was created. Taxpayers did owe the duty of support and education to the younger daughter who was 19 when the trust was created (see Sections 25, 196 and 197, Civil Code of California) but even this obligation did not oblige them to create a trust for her benefit.

The argument that there was consideration for the trust *in that* each of the trustors agreed to make the declaration in consideration of the agreement of the other to make a contribution to the trust corpus, is not persuasive. The trust instrument recites no consideration but simply declares that the two taxpayers henceforth hold 7,000 shares of Marathon stock in trust. The record sustains the Tax Court in stating in its opinion that: "There is some argument to the effect that the petitioners by mutual promises became obligated, one with the other, to make gifts to their daughters and that the trust was not therefore a voluntary trust within the meaning of section 2280 as amended. That argument is in our opinion without merit. The purpose and intention of the petitioners was to make gifts to or for the benefit of their two daughters, 'and a gift, which is the transfer of something to another with-

---

[3] Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796; Helvering v. Dunning, 4 Cir., 118 F.2d 341, certiorari denied 314 U.S. 631, 62 S.Ct. 64, 86 L. Ed. 507; Kraft v. Com'r, 3 Cir., 111 F. 2d 370, certiorari denied 311 U.S. 671, 61 S.Ct. 32, 85 L.Ed. 431.

out compensation, implies and denotes an act of choice, a voluntary act. The creation of the trust was merely the method for effecting or making the intended gift, and it takes its voluntary character therefrom." 3 T. C. 281.

In their gift tax returns for 1935 taxpayers took the position that the trust was a *gift*. We think the evidence clearly sustains this view. Even though the Tax Court confronted conflicting testimony on whether the corpus of the trust was a gift and intended to be such, we think the Tax Court's finding is conclusive as to the matter of consideration. Weighing the evidence, determining its probative value and drawing inferences therefrom is peculiarly and exclusively the function of the Tax Court. See Zanuck v. Com'r, 9 Cir., 149 F.2d 714, 719; Trust of Bingham v. Com'r, 325 U.S. 365, 65 S.Ct. 1232; John Kelly Co. v. Com'r (Talbot Mills v. Com'r), 66 S.Ct. 299. There was substantial evidence on which to rest such a finding.

We do not agree with taxpayers that the original declaration of trust is more than a deed or conveyance such as was involved in Enos v. Stewart, 138 Cal. 112, 70 P. 1005, and Robertson v. Melville, 60 Cal. App. 354, 212 P. 723, and that it is also a *contract* between the taxpayers, the two trustors and trustees, as between themselves and with respect to the designated beneficiaries. They insist that the gift aspect should not be considered but rather the claimed mutual and reciprocal *agreements* of the parents. They liken this situation to that where there is a pledge to contribute to a charity, enforcible legally as between multiple pledgors. The analogy is not apposite.

Nor do we agree that the document signed on March 27, 1940 changes the legal situation. During the taxable years here involved, it could not, by a process of retroactivity, defeat the effect and application of Federal tax laws. The fact remains that during the tax period here involved, the trust instrument was not reformed or revised. Furthermore, we do not agree that the gift tax returns, with their references to irrevocability, had the effect of amending the trust declaration. These returns were simply a report to the Government required by law and did not purport to change the nature of the trust. Any effective changes had to be in the instrument itself. (See note 2) See also Hughes v. Com'r, and Jurs v. Com'r, both supra.

There was no ambiguity in the trust instrument. Parol evidence to vary its plain terms was inadmissible. Cf. Hutchinson v. Hutchinson, 48 Cal.App.2d 12, 20, 119 P.2d 214; Jurs case, supra; Helvering v. Coleman-Gilbert, etc., 296 U.S. 369, 373, 374, 56 S.Ct. 285, 80 L.Ed. 278.

Taxpayers contend that the trust instrument is, in any event, valid as an *oral* irrevocable trust of *personal property*, citing Booth v. Oakland Bank, 1898, 122 Cal. 19, 54 P. 370, and Hellman v. McWilliams, 1886, 70 Cal. 499, 11 P. 659, to show the California rule. But the Tax Court found that there was no evidence of such a trust in this case. All that was agreed on was merged in the written trust instrument.

There can be no doubt that the situs of the trust was in California. It was administered from there; it was executed there; all of the parties to the trust lived there and the trust res (stock certificates) were located there until sold. The instrument itself did not disclose any intention on the part of grantors that the situs of the trust shall be in any other state.[4]

Taxpayers assert that the Commissioner is estopped from claiming or asserting that the trust ever was or is revocable. They go further and assert that *if* the original trust was *revocable,* then neither of the trustors was required to make any gift tax return with respect to the stock forming the initial corpus of the trust estate and no gift tax was payable on any such contribution. To support this view they cite Revenue Act of 1932, Section 501, 26 U.S.C.A. Int.Rev. Acts, page 580 (but it will be noted that subsection (c) of this section was repealed by Revenue Act of May 10, 1934, c. 277, Sec-

---

[4] The trust instrument designates Northern Trust Company of Chicago, Ill., as successor trustee, but this was only if both grantors failed to exercise their powers to appoint successor trustees. Later, Mr. Gaylord exercised his power and named his older daughter and a son-in-law (residents of California) as successor trustees. This after both taxpayers resigned as trustees. This trust company, as a possibility might have become trustee. But this did not and could not change the situs of the trust. Cf. Hughes v. Com'r, supra.

tion 511, 26 U.S.C.A. Int.Rev.Acts, page 769.) Regulation 79, Article 3; Burnet v. Guggenheim, 1932, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Estate of Sanford v. Com'r, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20; Rasquin v. Humphreys, 1939, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77 and Com'r v. Warner, 1942, 9 Cir., 127 F.2d 913. But repeal of the vital subsection (c) of Section 501 of the Revenue Act of 1932 by the Revenue Act of 1934, eliminates these cases as authorities here.

■■■ This argument must fail. The Commissioner is not estopped merely because he accepted without adjustment the gift tax returns for 1935 filed by the grantors, and the income tax returns filed by the two beneficiaries for the years 1936-1939 in which they included the trust income. See Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 71 L.Ed. 901; Mt. Vernon Trust Co. v. Com'r, 75 F.2d 938, certiorari denied 296 U.S. 587, 56 S.Ct. 99, 80 L.Ed. 415; Cf. United States v. LaSociete Francaise, 9 Cir., 152 F.2d 243. If it be suggested, as here, that acceptance of the tax returns could be construed as an assent that the returns correctly interpreted the tax effect of the trust instrument, the Commissioner is not estopped to change his determination as to the legal effect of a given transaction. Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996; Tonningsen v. Com'r, 9 Cir., 61 F.2d 199; Knapp-Monarch Co. v. Com'r, 139 F.2d 863. See also comment on authority for redetermination in Tide Water Oil Co. v. Com'r, 29 B.T.A. 1208, 1224; Bonwit Teller Co. v. Com'r, 2 Cir., 53 F.2d 381, 384, 82 A.L.R. 325; Mt. Vernon Trust Co. v. Com'r, supra.

It is true that the claims for refund of the gift taxes paid by grantors and the income taxes paid by the daughters were barred when the deficiency letters were mailed (September 17, 1941) to taxpayers. However, negotiations were under way relative to these taxes, as evidenced by an examination during 1940 and a report of an examination was submitted, dated December 21, 1940. Conferences were held prior to the issuance of the deficiency letters.

■■■ In Van Antwerp v. United States, 9 Cir., 92 F.2d 871, this court declined to hold the taxpayer estopped to claim a refund even though the Government was barred by the statute of limitations, when the claim was filed, from assessing and collecting taxes due from the wife. See also Helvering v. Brooklyn City R. Co., 2 Cir., 72 F.2d 274. To constitute estoppel there must be a misrepresentation of a fact or a wrongful misleading silence with respect to a fact. Van Antwerp v. United States, supra; U. S. v. S. F. Scott & Sons, 1 Cir., 69 F.2d 728, 732. A person knowing the facts or in a position to know them can not claim the benefit of estoppel. Hull v. Com'r, 4 Cir., 87 F.2d 260.

The Tax Court held that estoppel had not been specifically pleaded and was therefore not an issue in the case. See Tide Water Oil Co. v. Com'r, 29 B.T.A. 1208; El Dorado Oil Works v. Com'r, 46 B.T.A. 994. Cf. Helvering v. Brooklyn City R. Co., supra; Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511. Estoppel was not pleaded by taxpayers.

The second of the two controlling questions raised by taxpayers relates to the basis for computing profit upon sales of Marathon stock made by taxpayers individually and by the Gaylord trust in the taxable years. Commissioner argues that the Marathon stock sold by the trust and by Gertrude H. Gaylord was all acquired by gift from Mr. Gaylord and has the basis it would have in his hands under Section 113(a) (2) of the Revenue Acts of 1936, 1938 and the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code 113(a) (2), as a result of which a determination of his basis decides the question for all parties. Taxpayers agree that the correct basis for the Menasha shares is their fair market value when acquired in 1917. They contest only the Tax Court's finding of fair market value.

■■■ We have examined the record and we are unable to conclude that the evidence fails to support the findings of the Tax Court. The question of value of stock is essentially one of fact and the findings of the Tax Court must be sustained if supported by substantial evidence. The determination of the Commissioner is prima facie correct and taxpayers have the burden of overcoming the presumption. From the record we cannot say that the decision was "not in accordance with law". There was substantial evidence and a rational basis for the conclusions of the Tax Court. See The John Kelly Co. v. Com'r, and Talbot Mills v. Com'r, supra; Zanuck v. Com'r, supra; Elmhurst Cemetery v. Com'r, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491. Trust of Bingham v. Com'r.,

supra. In the Tax Court, the Commissioner argued that under Section 22(a) or Section 166 of the Revenue Acts of 1936 and 1938, supra, the trust was revocable. The Commissioner relied on Section 22(a) in the deficiency letters and he contends here that while the Tax Court made no finding as to whether Section 22(a) also applied, that nevertheless the decision of the Tax Court may be supported on the ground that taxpayers retained such powers of control over the trust property that they were, in substance, the owners thereof. We do not believe that the holding in Helvering v. Stuart, supra, suggests remand for a specific finding on Section 22(a). Taxpayers concede in their brief that application of this section was urged by the Commissioner on the Tax Court. We think it may be invoked here in support of the decision of the Tax Court. See Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224; LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, rehearing denied 309 U.S. 694, 60 S.Ct. 465, 84 L.Ed. 1035; Ryerson v. United States, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917; Marshal v. Pletz, 317 U.S. 383, 390, 63 S.Ct. 284, 87 L.Ed. 348. Cf. Helvering v. Wood, 309 U.S. 344, 347, 348, 60 S.Ct. 807, 84 L.Ed. 993, waiver below.

Judgment of the Tax Court is affirmed.