## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* WOOD.

No. 384. Argued February 5, 1940.—Decided February 26, 1940.

*Mr. Warner W. Gardner,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Messrs. Sewall Key, L. W. Post,* and *Richard H. Demuth* were on the brief, for petitioner.

*Messrs. George M. Wolfson* and *Dean G. Acheson* for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case, like *Helvering* v. *Clifford, ante,* p. 331, is here on certiorari, the problems in the two cases being the same

in certain essential respects. In April 1931 respondent, who owned twenty-five shares of stock of Book-of-the-Month Club, Inc., made himself trustee of those shares under an agreement which was to expire in three years[1] or earlier on the death of either him or his wife. By the trust he was to "hold, invest, and reinvest" the shares, to "collect the net income therefrom" and to pay it to his wife. He had the power to "retain" the stock or to "sell" it or "any part thereof" at such "time and on such terms" as he should "deem proper."[2] It was provided that his power of investment or reinvestment of "any of the property or moneys held in trust" was not to be restricted by any law governing investments by trustees. He was also given power to "fix and determine" the value of the property for all purposes of the trust and to determine "whether any property or money received or held in trust shall be treated as capital or income, and the mode in which any expense incidental to the execution of the trust is to be borne as between capital and income," with the proviso, however, that stock dividends and subscription rights should be treated as principal. He was prohibited from receiving any commissions with respect to principal or income; and an exculpatory clause purported to protect him against any loss except that occasioned by his wilful misconduct. He had the power to appoint a substitute trustee.[3] On termination of the trust "all property then held in trust" was to go to him. The trust contained no power of revocation nor any power to revest in the grantor at any time, prior to the date of termination, title to any part of the corpus.

---

[1] In 1932 the term was extended to five years from April, 1931.

[2] His right to sell was subject to a collateral agreement, not material here, with one Scherman, granting Scherman a preëmptive right in case respondent decided to sell.

[3] No substitute trustee was, however, appointed, respondent continuing to act as trustee until termination of the trust in 1936.

346

During 1934 respondent paid over to his wife $8,750, which was the entire income from the trust for that year. She included it in her income tax return. The Commissioner, being of the opinion that the income was taxable to respondent, determined a deficiency in his 1934 return. Respondent appealed to the Board of Tax Appeals which held that petitioner was in error (37 B. T. A. 1065). The Circuit Court of Appeals affirmed (104 F. 2d 1013) on the authority of *United States* v. *First National Bank,* 74 F. 2d 360.

Petitioner maintains that the trust income is taxable to respondent either under § 166 or § 22 (a) of the Revenue Act of 1934 (48 Stat. 680) or both.

By § 166 the income from a trust is taxable to the grantor where "at any time the power to revest in the grantor title to any part of the corpus of the trust is vested" in him or in any person "not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom." [4] Petitioner has not undertaken to establish that under New York law, which governs this trust, respondent had the power to revoke it prior to the end of the term. But in his contention that the trust here involved is covered by § 166, petitioner points out that there is no practical difference between a revocable trust and one certain to be terminated soon. And he argues that it would not be sensible

[4] Sec. 166 reads in full:

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

to impute to Congress a purpose to impose the tax when the grantor has an executory power to revest title in himself but to withhold the tax when the grantor, by provisions in the trust deed, has already exercised that power.

Our difficulty lies not in an inability to see the similarity of those situations but in being able to say that Congress treated them the same under § 166. A power to revest or revoke may in economic fact be the equivalent of a reversion. But at least in the law of estates they are by no means synonymous. For, generally speaking, the power to revest or to revoke an existing estate is discretionary with the donor; a reversion is the residue left in the grantor on determination of a particular estate. See Tiffany. Real Property (2nd ed.) § 129 *et seq.*, § 316 *et seq.* Congress seems to have drawn § 166 with that distinction in mind, for mere reversions are not specifically mentioned. Whether as a matter of policy such nice distinctions should be perpetuated in a tax law by selecting one type of trust but not the other for special treatment is not for us. We have only the responsibility of carrying out the Congressional mandate. And where Congress has drawn a distinction, however nice, it is not proper for us to obliterate it. That seems to us to be the case here. Whether wisely or not, Congress confined § 166 to trusts where there was a "power to revest." The problem of interpretation under § 166 is therefore quite different from that under § 22 (a). The former is narrowly confined to a special class; the latter by broad, sweeping language is all inclusive. *Helvering* v. *Clifford, supra.* Accordingly, the wide range for definition and specification under the latter is lacking under § 166. And so far as § 166 is concerned no apparent or lurking ambiguity requires or permits us to divine a broader purpose than that expressed. The legis-

lative history corroborates this conclusion. When the 1934 Act was before the House Committee, the Treasury recommended that income from short term trusts and from revocable trusts should be taxable to the creator.[5] The Congress adopted the latter[6] by an appropriate amendment to § 166; but it did not select the former for special treatment. When such clear choice of ideas has been made in the drafting of a specific provision of the law, its language must be taken at its face value. Sec. 166 is therefore not applicable to this trust since respondent is given no power to recall the corpus. He or his estate gets it at the end of the term, on the death of his wife, or on his own death—whichever is the earliest.

For a wholly different reason, petitioner's argument based on § 22 (a) must fail. The Board of Tax Appeals purported to place its decision solely on § 166 and § 167 of the Act. Petitioner in his assignments of error specifically mentioned only § 166 and § 167, not § 22 (a). In his brief before the Circuit Court of Appeals petitioner expressly waived reliance upon any section other than

---

[5] Revenue Revision, 1934, Hearings before the Committee on Ways & Means, H. R. 73rd Cong., 2nd Sess., p. 151. The recommendation read: "The income from short-term trusts and trusts which are revocable by the creator at the expiration of a short period after notice by him should be made taxable to the creator of the trust."

[6] Conference Rep. No. 1385, H. R. 73rd Cong., 2nd Sess., p. 24:

"Under existing law, the income from a revocable trust is taxable to the grantor only where such grantor (or a person not having a substantial adverse interest in the trust) has the power within the taxable year to revest in the grantor title to any part of the corpus of the trust. Under the terms of some trusts, the power to revoke cannot be exercised within the taxable year, except upon advance notice delivered to the trustee during the preceding taxable year. If this notice is not given within the preceding taxable year, the courts have held that the grantor is not required under existing law to include the trust income for the taxable year in his return. The Senate amendments require the income from trusts of this type to be reported by the grantor. The House recedes."

§ 166. Though petitioner in his petition for certiorari relied on § 22 (a), respondent in opposition thereto took the position that that point was not available to petitioner here as it was not raised below. In view of these facts, especially the express waiver below, we do not think that petitioner should be allowed to add here for the first time another string to his bow. As we have indicated, the issues under § 166 and § 22 (a) are not coterminous. Though both deal with concepts of ownership, the range of inquiry under the latter is broad, under the former confined. To open here for the first time and in face of the express disclaimer an inquiry into the broader field is not only to deprive this Court of the assistance of a decision below but to permit a shift to ground which the taxpayer had every reason to think was abandoned in the earlier stages of this litigation.[7] See *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415, 418. It is not apparent why a less strict rule is necessary in order adequately to protect the revenue.

*Affirmed.*

Mr. Justice Roberts concurs in the result.

---

[7] Art. 166–1 of Treasury Regulations 86; originally promulgated under § 166, was not promulgated under § 22 (a) until 1936 (T. D. 4629), two years after the tax liability here in issue occurred. Hence we do not have a case of reliance by the government on a regulation which during the taxable year in question rested on two legs, one of which was § 22 (a).