## COMMISSIONER OF INTERNAL REVENUE v. BEROLZHEIMER (two cases).

### Nos. 63, 64.

Circuit Court of Appeals, Second Circuit.

Dec. 23, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to the Atty. Gen., for Commissioner of Internal Revenue.

Mark Eisner, of New York City (Mark Eisner and Walter F. Sloan, both of New York City, of counsel), for respondents.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

These proceedings concern income taxes for the year 1934. The Commissioner of Internal Revenue has filed petitions for review (1) of a decision of the Board of Tax Appeals adjudging an overpayment of $1,095.95 by Alfred C. Berolzheimer, and (2) an overpayment of $5,696.40 by Edwin M. Berolzheimer. The appeals were argued together.

### Trust of Alfred C. Berolzheimer.

Alfred C. Berolzheimer executed a declaration of trust on May 2, 1932, in which he declared himself trustee of certain specified securities for the benefit of his son Kenneth who was born April 25, 1925. The trust was irrevocable but was to terminate on January 2, 1941, or upon the death of himself or the beneficiary, whichever should first occur. He was to apply to the use of Kenneth "at such times, in such amounts and in such manner as said Trustee may in his uncontrolled discretion decide, so much of the net income from this trust fund as in the sole and absolute discretion of the Trustee may be necessary and proper for the maintenance, education and well-being of said Kenneth * * * and shall accumulate the balance of such net income for said Kenneth * * *, if any." He was also empowered to use principal, if necessary, for the needs of the beneficiary. The accumulated income was to go to the beneficiary upon termination of the trust and the corpus was to go to the settlor, or his estate. Stock dividends, rights, extraordinary dividends equivalent to capital disbursements, and all proceeds of sale or other disposition of assets were to be a part of the corpus.

The trustee was empowered to manage, invest, retain, sell, exchange, vote and otherwise deal with the assets of the trust as he thought best. He was not limited to the investments fixed by the laws of New York for fiduciaries and he was not to be liable for loss resulting from the investment or retention of the trust funds.

The net income of the trust for the year 1934 was $13,919.17 of which $9,600 was distributed for the use of the beneficiary and reported by him while the remainder was retained by the trust as an accumulation and reported by it. The Commissioner assessed the entire $13,919.17, for income tax purposes, to the grantor. However, the Board, on review, held that the $9,600 only should be so assessed because that was the amount expended in fulfillment of an obligation of the settlor to support his infant son.

The taxpayer's personal income for the year 1934, other than any which might be attributed to him as arising from the trust, was $27,993.50.

### Trust of Edwin M. Berolzheimer.

On February 23, 1931, Edwin M. Berolzheimer created three trusts in various securities and declared himself the trustee of each. One trust was for the benefit of his wife, one for the benefit of his daughter, and one for the benefit of his son. The trusts were similar to those created by Alfred C. Berolzheimer except that the one for the wife was not restricted as to use. They were all to terminate on January 2, 1941, at the latest. The son was over 21 years of age in 1934, and the father owed him no duty of support, education and maintenance. The daughter became 21 years of age on September 4, 1934. The Board held that the income of these two trusts for the wife and son was not taxable to the settlor. Only $3,425.47 of the trust for the daughter was used to support her and that amount was held taxable against him.

The taxpayer's personal income for the year 1934, other than any which might be attributed to him as arising from the trusts, was $27,908.70.

 The Commissioner has appealed from the decisions of the Board on the ground that each of the trusts set up by either of the grantors was limited to a maximum duration of less than ten years, that each was subject to extensive powers of control on the part of the particular grantor, and that the principal of each trust would pass to the grantor or his estate at its termination. The Commissioner relies on Helvering v. Clifford, 309 U.S.

331, 60 S.Ct. 554, 557, 84 L.Ed. 788, and argues that in the light of that decision, and because of the close family relation of each grantor and beneficiary, the grantor of each trust is to be regarded as the owner of the corpus and the income is to be held taxable to him under Section 22(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, p. 669, as "growing out of the ownership or use of or interest in such property."

There are only two differences of any substance between the present cases and Helvering v. Clifford: (1) The trust terms in the cases before us were all for a maximum period of less than ten years, while in Helvering v. Clifford the trust was for a maximum of only five years. (2) The Board made no finding here that the settlors remained the owners of the corpus, while in Helvering v. Clifford it found that the husband was the owner of the corpus for the purposes of § 22(a).

As we understand the decision in Helvering v. Clifford the court did not decide that the transaction was a sham but rather that the trust though valid under state law and involving the relation of trustee and cestue que trust between the parties was ineffective to save the grantor from taxation upon the income. It held that a grantor of a short term trust under which he is to be the trustee and to have such broad powers over the disposal of the principal as to approximate those of an owner and under which the income is to remain in his family and the reversion in himself will be subjected to income taxes as owner. As the court said: "We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property."

It is hard to say what is "a temporary reallocation of income", and nine or ten years is farther from the meaning of "temporary" than five years were. But in the present trust the death of the grantor or the beneficiary would terminate it so that it might in fact be for a term of even a trifling character. We can see no valid distinction from Helvering v. Clifford though we confess that it is hard to set limits or draw analogies which may be of service in interpreting a rule which deals with situations so much outside of ordinary legal categories. Cf. Helvering v. Horst, 61 S.Ct. 144, 85 L.Ed. ——, Nov. 25, 1940.

The thing which is most puzzling in determining the scope of Helvering v. Clifford is the statement in the opinion that: "the benefits directly or indirectly retained" by the grantor of the trust "blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner * * * for the purposes of § 22(a)."

Whether certain facts, which in the present case are undisputed, constitute ownership within the meaning of § 22(a) would ordinarily be a question of law. Yet the decision as to whether or not such facts have the legal effect of proving ownership seems to be treated as one of fact. Whether the court meant to preclude any review of a finding by the Board on such an issue is not entirely certain. But the sentence of the opinion next to the one quoted indicates that the determination in Helvering v. Clifford, though made upon undisputed facts, required justification and that if it had involved an unreasonable conclusion would have required rejection. At page 336 of 309 U.S., at page 557 of 60 S.Ct. 84 L.Ed. 788, Justice Douglas said in defense of the Board's conclusion that the facts established ownership in the grantor for purposes of taxation:

"To hold otherwise would be to treat the wife as a complete stranger; to let mere formalism obscure the normal consequences of family solidarity; and to force concepts of ownership to be fashioned out of legal niceties which may have little or no significance in such household arrangements.

"The bundle of rights which he retained was so substantial that respondent cannot be heard to complain that he is the 'victim of despotic power when for the purpose of taxation he is treated as owner altogether.' * * *"

In view of the foregoing treatment of the problem before it, it is hardly possible that the court would have felt bound to affirm the Board (as it did) if the Board had concluded that the facts did not establish ownership. On the contrary we believe that the remark near the end of the opinion that Congress had left "to the triers of fact the initial determination of whether or not on the facts of each case the grantor remains the owner for purposes of § 22(a)" meant no more than that such a determination was the primary duty of the Board. We think this follows from the following language of the opinion found at page 335 of 309 U.S., at page 556 of 60 S.Ct., 84 L.Ed. 788: "In this case we cannot conclude as a matter of law that respondent ceased to be the owner of the corpus after the trust was created. Rather, the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of § 22(a)."

We think that the opinion did not mean that we must sustain findings that ownership is not established for purposes of § 22 (a) upon a state of facts substantially identical with those from which the Board has already found such ownership to exist and upon which the Supreme Court has affirmed its decision. The court throughout the opinion treated the nature and effect of the trust as one for judicial determination, initially on the part of the Board and finally on the part of the courts and intimated that the Board's classification of such a trust as within or without § 22(a) should not be lightly disturbed by the courts. Cf. Helvering v. Hormel, 8 Cir., 111 F.2d 1. The duration of the trust, and the control by the grantor, is quite different from that in Commissioner v. Branch, 1 Cir., 1940, 114 F.2d 985.

It is to be observed that the Board made its orders before the decision in Helvering v. Clifford was rendered and doubtless would have reached another determination if that authority had been available. Because of the similarity between the trusts before us and the trust before the court in Helvering v. Clifford, we think that decision applies and it will be necessary to reverse the orders appealed from unless the point we shall next discuss calls for a different result.

■ It is argued that the government cannot raise before this court the question of the applicability of § 22(a) because it did not raise that point before the Board of Tax Appeals. This contention is plainly unsound. While it is true that at the hearings before the Board the government relied partly on § 166, 26 U.S.C.A. Int.Rev.Code, § 166, which relates to taxation of income from revocable trusts, it also contended that the provisions of each trust instrument gave the grantor such control over the corpus of the trust that "in reality there was no trust." That this is so is apparent both from the majority opinion and from the dissenting opinion of the Board. The contention that the trusts were sham necessarily involved the claim that § 22(a) was applicable, because in that event the income would be derived from the taxpayer's property and accordingly would be taxable under § 22(a). The government is doing no more here than giving new reasons why the income of the trusts is taxable against the settlors under § 22(a). The argument rests upon the theory, announced in Helvering v. Clifford, that the income, though derived from a trust that is valid inter partes, is to be attributed to the grantor for tax purposes because of the short term of the trust, his broad powers of control as sole trustee, and his ownership of the reversion. This is a mere supplemental argument based on the same section already under consideration. The present situation is accordingly distinguishable from that in Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796, where an entirely new section was invoked before the Supreme Court that had not been considered by the Court of Appeals, 2 Cir., 104 F.2d 1013. It falls directly within our decision in Chase National Bank v. United States, 2 Cir., 116 F.2d 625, just rendered. The application of the rule of Helvering v. Clifford is also warranted by the action of the Supreme Court in Helvering v. Leonard, 310 U.S. 80, 60 S.Ct. 780, 84 L.Ed. 1087, referred to in Chase National Bank v. United States, supra. For this reason the merits of the case are open to our consideration and call for a reversal for the reasons already stated.

The motion to allow the government to amend its assignments of error as prayed for is granted, the orders are reversed, and the proceedings remanded to the Board with direction to determine the grantors'

income taxes for the year 1934 in accordance with the views expressed in this opinion.