**In the Matter of PUERTO RICO RAILROAD AND TRANSPORT COMPANY, Debtor.**

**No. 2077.**

United States District Court
D. Puerto Rico,
San Juan Division.
Feb. 8, 1957.

Hartzell, Fernandez & Novas, San Juan, Puerto Rico, for trustee.

James R. Beverley, W. H. Beckerleg, Referee in Bankruptcy, San Juan, P. R., for petitioner.

RUIZ-NAZARIO, District Judge.

South Porto Rico Sugar Company, a creditor herein, filed a petition to review the Referee's order of December 17, 1956, (entered on December 18, 1956) by which he denied two motions filed by said creditor: the first, challenging the jurisdiction of this court to enter its order of September 11, 1956 adjudicating the debtor in bankruptcy, and the second, seeking for a stay of the proceedings pending the determination of the questions raised by the first.

After hearing ample oral argument on said petition for review and giving the most thoughtful consideration to the memoranda filed thereon, the court entered its order of January 23, 1957 denying the petition and affirming the Referee's order of December 17, 1956, for the reasons set out in the latter, as amplified in the present opinion which was then being prepared to be made of record in due course.

### I.

These proceedings were initiated by an original Chapter X petition filed by debtor Puerto Rico Railroad and Transport Company under the provisions of Sec. 128 of the Bankruptcy Act, as added June 22, 1938, c. 575, Sec. 1, 52 Stat. 886, Title 11 U.S.C.A. § 528.

It has been conceded by South Porto Rico Sugar Company, as well as by all the parties intervening in the controversy under review herein, that debtor Puerto Rico Railroad and Transport Company is not a railroad corporation authorized to file a petition under Section 77 of the Act, as added Mar. 3, 1933, c. 204, Sec. 1, 47 Stat. 1474 as subsequently amended, Title 11 U.S.C.A.

Chapter 8, § 205; that it, therefore, is included in the definition of the term "corporation" contained in Sec. 106(3) of the act, Title 11 U.S.C.A. § 506(3), and that, as such, it was lawfully entitled to file an original petition under Sec. 128 of the Act, Title 11 U.S.C.A. § 528.

Upon the filing of the original petition, and the court being satisfied that it complied with the requirements of Chapter X and had been filed in good faith, an order approving it was entered, pursuant to Sec. 141 of the Act, Title 11 U.S.C.A. § 541. A trustee was appointed under Sec. 156 of the Act, Title 11 U.S.C.A. § 556, and all the proceedings authorized and provided under Sections 157, 158, 161, 162, 164, 165, 166, 167, 169, 171, 186, 187, 189, 190, 191, 196, 197, 198, 200, 201, 206, 207, 209, 210, 211, 212 and 213 thereof, Title 11 U.S.C.A. §§ 557, 558, 561, 562, 564, 565, 566, 567, 569, 571, 586, 587, 589, 590, 591, 596, 597, 598, 600, 601, 606, 607, 609, 610, 611, 612 and 613, were strictly followed thereafter.

The trustee complied with all the requirements of the Act and made several bona fide efforts, with the cooperation of some of the principal creditors and interested parties, to submit a feasible plan of reorganization. The Court was kept at all times well informed of all the steps taken by the trustee in this connection. The period for submitting a feasible plan, which had to meet the majority required by the Act for its acceptance, was extended several times in an effort to harmonize the different views of the interested parties as to its feasibility. Finally, the trustee informed the Court of the impossibility of submitting any feasible acceptable plan of reorganization.

Said motion and report of the trustee was set for hearing and all the parties appearing, conceded that it was impossible to obtain the required acceptance of any feasible plan of reorganization for submission to the Court and that the only alternative to be followed was to liquidate the estate by adjudicating the debtor in bankruptcy.

As viewed by me, the other alternative contemplated by the Act in this Chapter X proceedings, i. e., a dismissal of the proceedings, would have been ruinous to the creditors and stockholders (all of the latter being laborers and employees of the debtor) and would have originated a financial chaos, detrimental to the best interests of all the parties, as well as to the Commonwealth's economy, and therefore, an adjudication in bankruptcy, to liquidate the estate in the orderly manner provided by the Act, was indubitably the best solution for protecting the interests of the creditors and stockholders, in the exercise of a sound judicial discretion. Exercising the powers conferred on Federal Courts by Section 236 (2) of the Act, Title 11 U.S.C.A. § 636 (2), I entered an order adjudicating the debtor in bankruptcy, and ordering that these proceedings be referred to the Referee in Bankruptcy for the purpose of liquidating the estate.

No creditor, stockholder or any other party objected to said adjudication in bankruptcy, in any manner whatsoever.

The proceedings were thus referred to the Referee in Bankruptcy to be dealt with by him as provided by the Act, until a total, fair and orderly liquidation of the estate could be accomplished.

The administration and process of liquidation of the estate has been, since then, very efficiently and wisely conducted by the trustee, under the supervision of the Referee and the most earnest cooperation of a creditor's committee, designated by the Referee to advise him on any and all offers or bids made by potential purchasers of the properties of the estate.

So much so that, at the time that South Porto Rico Sugar Company filed the two motions denied by the Referee's order heretofore reviewed and affirmed, it was reasonably expected that the assets of the estate would be sold for an amount sufficient to cover all the expenses of administration and liquidation,

satisfy in full all the liabilities of the estate and pay to all the stockholders the par value of their stock, with the possibility that a surplus would remain for distribution as dividend among the stockholders.

## II.

As regards the question in issue, the language of the statute is crystal clear and free from all doubt.

Sec. 101, 11 U.S.C.A. § 501, makes the provisions of Chapter X applicable exclusively to proceedings under it.

Under Sec. 102, 11 U.S.C.A. § 502, such provisions of Chapters 1 to 7 inclusive of the act which are inconsistent or in conflict with the provisions of Chapter X are not applicable in proceedings thereunder, thus establishing that the provisions of Chapter X shall prevail over any of the provisions of the aforesaid seven chapters whenever there is any inconsistency or conflict between them.

Sec. 106(3), 11 U.S.C.A. § 506(3), expressly includes railroad corporations of the type of debtor herein, within the definition of "corporations", entitled to come within the provisions of Chapter X.

Sec. 111, 11 U.S.C.A. § 511, gives exclusive jurisdiction of the debtor and its property wherever located to the Court in which the petition is filed.

Sec. 112, 11 U.S.C.A. § 512, determines that the jurisdiction, powers and duties of the court and its officers, prior to the approval of a petition, shall be the same as in a *bankruptcy proceeding before adjudication,* unless inconsistent with other provisions of Chapter X.

Sec. 114, 11 U.S.C.A. § 514, confers upon the court and its officers, on the approval of the petition, the same *jurisdiction, powers* and *duties as in a bankruptcy proceeding after adjudication,* unless inconsistent with other provisions of *Chapter X.*

Sec. 116, 11 U.S.C.A. § 516, permits, among other things, a receiver or trustee appointed in any proceeding under the Chapter, to *sell any property of the debt-*

*or, whether real or personal.* (See subsection 3).

Sec. 121, 11 U.S.C.A. § 521, provides that the jurisdiction of appellate courts in proceedings under the Chapter *shall be the same as in a bankruptcy proceeding.*

Sec. 126, 11 U.S.C.A. § 526, authorizes a corporation, as defined in the chapter, to file a petition for reorganization under it, if no other petition by or against it is pending thereunder.

Sec. 128, 11 U.S.C.A. § 528, authorizes any such corporation to file an *original petition* under the Chapter with the court in whose territorial jurisdiction the corporation has had its principal place of business or its principal assets for the preceding six months, or for a longer portion of the preceding six months than in any other jurisdiction.

Sec. 149, 11 U.S.C.A. § 549, provides than an order, which has become final, approving a petition filed under the Chapter, shall be a conclusive determination of the jurisdiction of the court.

Secs. 186, 187, 11 U.S.C.A. §§ 586, 587, place a trustee appointed under the Chapter on a par with a trustee in bankruptcy.

Sec. 200, 11 U.S.C.A. § 600, places creditors and all other persons with respect to the property of the debtor in proceedings under the chapter, on a par with creditors and other persons in *bankruptcy proceedings, both before and after adjudication.*

Sec. 236(2), 11 U.S.C.A. § 636(2), gives the court jurisdiction and power, if no plan is proposed, approved or accepted, to enter an order adjudging the debtor, whoever it may be, a bankrupt, and directing that bankruptcy be proceeded with pursuant to the provisions of the Act.

And under Sec. 238(1), 11 U.S.C.A. § 638(1), where the petition was filed, as in this case, under Sec. 128, 11 U.S. C.A. § 528, of the Chapter, the proceeding, upon the entry of an order directing that bankruptcy be proceeded with, shall thereafter be conducted in the

same manner and with like effect as if an involuntary petition for adjudication had been filed at the time when the petition under the Chapter was filed, and a decree of adjudication had been entered at the time when the petition under the Chapter was approved.

As regards the treatment to be accorded to debtor corporations coming under Chapter X, as per the definition contained in Sec. 106(3) thereof, 11 U. S.C.A. § 506(3), and, more particularly, as concerns the applicability under Sec. 102, 11 U.S.C.A. § 502, of the provisions of Sec. 4, Ch. 3, of the Act, 11 U.S. C.A. § 22, in reorganization proceedings initiated by the filing of an *original* petition pursuant to Sec. 128, Ch. 10, of the Act, 11 U.S.C.A. § 528, and as concerns the final disposition to be made by the court, under Sec. 236(2), Ch. X thereof, 11 U.S.C.A. § 636(2), if no plan is proposed within the time fixed or extended by the judge, etc., Chapter X of the act (the provisions of which exclusively govern this type of proceedings, as per Sec. 101 thereof, 11 U.S.C.A. § 501) *makes no distinction* whatsoever between railroad corporations of the type of debtor herein and all the other corporations comprised within the aforesaid definition.

*Ubi lex non distinguit nec nos distinguere debemus.*

The language of the statutory provisions of Chapter X, in connection with the matter at issue being, thus, clear and free from ambiguity, resort to legislative history would be superfluous, as was very aptly held by the Supreme Court in Ex Parte Collett, 337 U.S. 55, at page 61, 69 S.Ct. 944, at pages 947, 959, 93 L.Ed. 1207, where it was said:

"Third. Petitioner's chief argument proceeds not from one side or the other of the literal boundaries of § 1404(a), but from its legislative history. The short answer is that there is no need to refer to the legislative history where the statutory language is clear. 'The plain words and meaning of a statute cannot be overcome · by legislative history·

which through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.' Gemsco [Inc.] v. Walling, 1945, 324 U.S. 244, 260, 65 S.Ct. 605, 614, 89 L.Ed. 921. This canon of construction has received consistent adherence in our decisions."

Petitioner on review has, however, cited both before the Referee and in this Court, the 74th Congress, 2d Session, Committee Print, of a paper entitled "Analysis of H.R. 12899.—A bill to amend an act entitled "an act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898, and acts amendatory thereof and supplementary thereto; and to repeal section 76 thereof and all acts and parts of acts inconsistent therewith—Introduced by Mr. Chandler, May 28, 1936—Referred to the Committee on the Judiciary and ordered to be printed.—*Containing Amendments Proposed by the National Bankruptcy Conference.* Printed for the use of the Committee on the Judiciary, House of Representatives, 74th Congress—United States Government Printing Office—Washington, 1936". (Emphasis supplied.)

From the above document, petitioner on review, has only pointed out to the referee and the court the contents of pages 79 and 80 thereof which contain the proposed language for the amendment of Chapter III, Sub-Sec. II(e) (3), sub-par. (b) and the footnotes by Mr. Jacob I. Weinstein, member bankruptcy committee, Commercial Law League of America, Philadelphia, Pa., explaining the reasons for recommending the adoption of the amendment of said sub-section to read as therein proposed.

The text of said sub-paragraph (b), as there proposed, was the following:

"(b) where the petition *has not* been *filed in a pending bankruptcy proceeding,* after hearing upon notice, enter an order, Except in the Case of a Railroad or Other Public Utility, either adjudging the debtor a bankrupt and directing that the

bankruptcy be proceeded with pursuant to the provisions of this Act, or dismissing the proceeding under this sub-section, as in the opinion of the Court may be in the interests of the creditors and stockholders." (Italics and capitals supplied.)

The explanation given by Mr. Weinstein, for inserting the express exception of a railroad or other public utility which appears in capitals in the above quotation of the recommended text of said sub-paragraph, appears in the second paragraph of the footnote and reads as follows:

"We have restricted the exception in the case of a 'railroad or other public utility' *to an original proceeding under the section.* A railroad cannot be adjudged a bankrupt under the Act, and therefore the exception in respect to a railroad is *not relevant to a pending bankruptcy proceeding.*"

The above quoted language of said footnote fully supports the Referee's holding under review herein, with which I fully agree.

It merely reiterates the Referee's and this Court's views that, while in corporate reorganization proceedings reaching the court under Section 127 of Chapter X of the Act, 11 U.S.C.A. § 527, as a mere *sequel of a then pending bankruptcy proceeding* originally brought under the general provisions of Chapters 1 to 7 inclusive of the Act, it was unnecessary for the Congress, upon enacting what is now par. (1) of Sec. 236 of Chapter X of the Act, 11 U.S.C.A. 636 (1), to exclude or except railroad corporations therefrom simply because the legal existence of any such *original* bankruptcy proceeding is something that cannot be thought of in the light of the provisions of Sec. 4, Title 3 of the Act, 11 U.S.C.A. § 22, governing the initiation of such general bankruptcy proceedings, it was, however, *mandatory* for the Congress, upon enacting what is now par. (2) of Sec. 236 of Chapter X of the Act, 11 U.S.C.A. § 636(2), to expressly except from the bankruptcy adjudication

provisions thereof such railroad corporations which, because of their inclusion within the definition of the term corporation contained in Sec. 106(3), Chapter X of the Act, 11 U.S.C.A. § 506(3), had initially come to court, under Chapter X, for reorganization proceedings through an *original* petition under Sec. 128 thereof, 11 U.S.C.A. § 528, *if Congress had had the intention that such railroads* be excluded from the bankruptcy adjudication provisions of the Section.

Mr. Weinstein and his bankruptcy committee, in the above quoted footnote and the text they recommended for sub-paragraph (b) of Subsection II(e) (3), thought that this was indispensable in order to prevent railroad corporations, of the type of bankrupt herein, being lawfully adjudicated in bankruptcy.

Congress, however, clearly manifested its intention not to withhold from, but rather grant to such railroad corporation, the benefits of an adjudication in bankruptcy (upon failure of reorganization attempts under Ch. X) by deleting and omitting from the aforesaid proposed draft of said sub-paragraph the words "except in the case of a railroad or other public utility" appearing at lines 16 and 17 thereof, and enacting its provisions in the language that now appears in Sec. 236(2) of Chapter X of the Act, 11 U.S.C.A. § 636(2), which contains no exceptions whatsoever either of railroads or of any other corporations.

In this connection, the following statement by the Supreme Court in Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, at page 492, 67 S.Ct. 789, at page 793, 91 L.Ed. 1040, appears to be very appropriate:

"We are invited to make a lengthy examination of views expressed in Congress while this and later legislation was pending to show that exclusion of foremen was intended. There is, however, no ambiguity in this Act to be clarified by resort to legislative history, either of the Act itself or of subsequent *legislative*

*proposals which failed to become law."* (Emphasis supplied.)

And the following holding of Helvering v. Wood, 309 U.S. 344, at page 348, 60 S.Ct. 551, at page 553, 84 L.Ed. 796, is still more in point:

"When the 1934 Act was before the House Committee, the Treasury *recommended* that income from short term trusts and from revocable trusts should be taxable to the creator. *The Congress adopted the latter* by an appropriate amendment to § 166; *but it did not select the former for special treatment. When such clear choice of ideas has been made in the drafting of a specific provision of the law, its language must be taken at its face value."* (Emphasis supplied.)

There is still some more legislative history, not cited by petitioner on review, which further supports the Referee's and this Court's views on the matter.

In the Analysis of H.R. 12889, above referred to, page 60 thereof, the word "debtor" appeared in place of the word "corporation" at the beginning of Sub-Section II(b), which was the proposed section therein, comparable to the present Sec. 126, Chapter X, of the Act, 11 U.S. C.A. § 526. In a later draft, H.R. 8046, 75th Congress, 1st Session, the recommended word "debtor" was substituted by the word "corporation" at the beginning of Sec. 126 thereof, and Sections 126 to 128 of said draft contained the same wording of the corresponding sections of the present Act.

At page 25 of the Sen.Rept. No. 1916, 75th Congress, 3d Session, accompanying H.R. 8046, it is stated:

"under Sec. 126, any corporation, or indenture trustee, as the terms are defined in this chapter, may file a petition under this chapter".

From the Analysis of H.R. 12889, above discussed, pages 57–58 thereof, it appears that the proposed text of Sub-Sec. IIa(2), defining "corporation" was substantially different from the text of its comparable Sec. 106(3) of the present Act, 11 U.S.C.A. § 506(3).

In footnote 1 of said Analysis it is explained that a comprehensive definition of the term "corporation" is necessary to show the expanded scope of the term and to include other classes of corporations which, although otherwise not amenable to the Act, are nevertheless granted the benefits of this form of relief. It is further said by the sponsors of the proposed text that, in conformance with subdivision n of 77B, "we expressly exclude certain municipally owned, controlled, or operated railways." And, it is added, that the term "transportation" is changed to "railroad", because any transportation corporation, other than a railroad, may become a bankrupt under Sec. 4 of the Act, and, therefore, "railroad" is a more accurate term and avoids confusion.

This, no doubt, implies that the sponsors of said amendment, knowing that "railroads" could not become bankrupts under Sec. 4 of the Act, while other transportation corporations could, recommended the change of words to place railroads on a par with such other corporations who could become bankrupts under Sec. 4, and thus avoid all confusion or misunderstanding in this respect.

In the next draft, H.R. 6439 dated April 15, 1937 (75th Congress, 1st Session), (see p. 43) the text of the aforesaid Subsection II(a) (2) of the former H.R. 12889 was changed to have the wording now appearing in Sec. 106(3) of the Act, 11 U.S.C.A. § 506(3). Said H.R. 6439 was subsequently amended, reintroduced and reported as H.R. 8046, 75th Congress, 1st Session. At the hearings before the House Judiciary Committe on H.R. 6439 (subsequently reported as H.R. 8046), the following discussion (reported at page 134) took place:

"Mr. Celler. Why do you include under those who are applicable 'any railroad corporation,' on line 20, page 43?

"Mr. Weinstein (reading): 'Corporation' shall mean a corporation,

120

as defined in this Act, which could be adjudged a bankrupt under this Act, and *any railroad corporation* excepting a railroad corporation authorized to file a petition under Sec. 77 of this Act.

"That comes from 77B.

"Mr. Celler. I asked that question advisedly. Does that mean a railway system, a traction line, or a subway system?

"Mr. Weinstein. Yes: it does mean that, not because of this language, but because we have deleted subdivision n of 77B, which provides that any municipally owned corporation, or transportation corporation in which such corporation has a certain interest, may be subject to the provisions of 77B, and then with the restriction providing its interest is more than 20%.

"Mr. Celler. Well, a railroad corporation comes under 77?

"Mr. Weinstein. That is right.

"Mr. Celler. *Then any railroad corporation* that cannot come under Section 77 *could come under this section?*

"Mr. Weinstein. No; we say *railroad corporations* which do not come under 77, *can come under this subsection.*

"Mr. Celler. That is what I said.

"Mr. Weinstein. I am sorry, but I misunderstood you". (Emphasis supplied.)

See also House Report No. 1409, 75th Congress, 1st Session, with reference to H.R. 8046, giving, at page 38, as reasons for amending section 77B, the structural defects thereof, and pointing out, at page 39, that Section 77B does not define the word "corporation", leaving open to conjecture whether said word, as defined in Section 1(6), proposed as (8) in the H.R. under consideration, is applicable to Sec. 77B and at page 41 of the aforesaid report, it is stated that, to remedy this, the defective definitions are recast and new ones are added for the term "corporation" and for other terms in H.R. 8046.

On August 10, 1937, said H.R. 8046 was passed by the House containing the same definition of corporation which now appears in Sec. 106(3) of the Act, 11 U.S.C.A. § 506(3). It came to the Senate on August 11, 1937 (75th Congress 1st Session). At the Senate hearings thereon (75th Congress 2d Session), what is now Section 106(3) met opposition because it allowed municipally owned transit lines to reorganize, while these had been excepted under Sec. 77B. It was thus attacked to protect the "5 cent fare" in New York City, the opponents requesting that Sec. 77B not be changed. There was no opposition or discussion except as to municipally owned railroads. The Senate, however, rejected the objection, and the text of Sec. 106(3) as approved by the House, did not suffer any change, H.R. 8046 being passed by the Senate and approved on June 22, 1938.

As to the applicability and governing effect of the provisions of Chapter X, Sections 101 and 102 of the present Act, 11 U.S.C.A. §§ 501 and 502, it appears from the Analysis of H.R. 12889, hereinabove discussed, that the language recommended by the proponents thereof (see said Analysis, sub-section IIa at page 56) was much different from the one finally adopted. The explanation given therefor by Mr. Weinstein in footnotes 1 and 2, of said page, was that this provision was new, and it was necessary to avoid the risk of a construction that the provisions thereof be extended to other sections of the act; that the sub-section was derived from Sec. 77B k, but was revised by the proponents for the sake of greater clarity and directness of statement. And it was further stated that the references to "bankrupts" and "bankruptcy proceedings" had been found unnecessary by said proponents, because provisions relating thereto would seem to be included in the more general phrase "other provisions of the Act."

Congress, however, did not follow the recommendations made by said proponents in the respects above mentioned. In H.R. 6439, 75th Congress, 1st Session,

the language thereof was simpler than the one proposed, but still different from the present text. When said H.R. 6439 was amended, reintroduced and reported as H.R. 8046, 75th Congress, 1st Session, the original language of the aforesaid sections was changed in the sense of giving governing force to the provisions of Chapter X in case of inconsistency with any other provisions of the Bankruptcy Act. As thus changed, the sections passed the House on August 10, 1937, and H.R. 8046 came to the Senate the next day.

At the Senate Hearings on said H.R. 8046, 75th Congress, 1st Session (see p. 37 of the report thereon) an amendment, to the section thereof which was comparable with the present Sec. 102 of the Act, was offered. Such amendment was said to derive from Section 77B k and it enumerated certain general sections of the bankruptcy act, which were not to apply to Chapter X proceedings. It further provided that all of Sections 1 to 72 inclusive of the general Bankruptcy Act were to be applicable when not inconsistent with the provisions of the chapter.

The proposed amendment was explained by Mr. Gerdes (see p. 82 of the Report), as follows:

" * * * we do have a considerable problem in Chapter X, and that is to what extent other provisions of the Act are applicable. Under 77B, certain sections of the general Bankruptcy Act were expressly stated to be inapplicable to proceedings under the section. That was eliminated in this pending bill. We are now seeking to insert a provision similar to that in 77B, so there may not be any doubt as to whether they are applicable or not. We are simply carrying into this bill certain provisions which already exist in 77B".

The necessity for revising Sec. 77B, based on the need of a more adequate statement of the applicability of the other general sections of the Bankruptcy Act, was recognized in Senate Report No. 1916, 75th Congress, 3d Session, at p. 20.

Said report explains at p. 6, that a proposed amendment to Sec. 102, amplifies the provision with reference to applicability so as to leave no doubt that, unless inconsistent or in conflict with the provisions of the chapter on Corporate reorganizations, the provisions of Chapters I to VII of the general Bankruptcy Act are to be applicable.

When the Senate approved H.R. 8046, it contained Sec. 102 amended to read as in the present Act. The text thereof adopted, in a slightly different form, the amendment offered in the Senate, above referred to. Said text was later accepted by the House and approved.

I have already made reference to the recommendation made in the Analysis of H.R. 12899, above discussed, in connection with the language of what is now Sec. 236(2) of the Act, 11 U.S.C.A. § 636(2), and the explanation given therefor by Mr. Weinstein in the second paragraph of the footnote appearing at p. 79 of said Analysis.

H.R. 6439, 75th Congress 1st Session, which was a subsequent draft of H.R. 12899, contained, at page 69, the section substantially comparable to the present Sec. 236 of the Act, except for the first sentences of the sections comparable to Sec. 236(1) and 236(2) which, as to the first read: "Where the petition was filed in a pending bankruptcy proceeding" and as to the second, read: "where the petition was not filed in a pending bankruptcy proceeding."

The phrase "except in the case of a railroad" which formerly appeared in H.R. 12889, was eliminated thereby, thus permitting a railroad to be adjudicated a bankrupt in an original proceeding under Sec. 128 of Chapter X, 11 U.S.C.A. § 528.

Said H.R. 6439 was amended, reintroduced and reported as H.R. 8046 and it included Sec. 236 with the same text as in the present act.

At page 46, of House Report No. 1409, 75th Congress, 1st Session, relative to H.R. 8046 the changes in Sec. 236 are discussed as follows:

"The procedure in respect to the dismissal of proceedings and adjudication has been materially changed. It is provided that upon dismissal of a proceeding, where the petition was filed in a pending bankruptcy proceeding, the bankruptcy proceeding becomes reinstated. However, in the case of a petition not filed in a pending bankruptcy proceeding, such proceeding may be dismissed *or an adjudication may be entered looking toward a liquidation as in the opinion of the court may be found in the interests of the creditors and stockholders*". (Emphasis supplied.)

H.R. 8046 was passed by the House on August 10, 1937 and it was introduced in the Senate the next day. At page 188 of the Senate Hearings thereon, it is pointed out that Sec. 236 is derived in part from 77B and provides for the dismissal of the proceedings, or alternatively, the liquidation of the debtor as the interests of the creditors and stockholders may require, in the event that no plan of reorganization is confirmed and consummated.

The text of Sec. 236 as passed by the House and introduced in the Senate under H.R. 8046, was approved and passed by the Senate without any change whatsoever on June 22, 1938, and is now the present Section 236 of the Act, 11 U.S. C.A. § 636.

 Both from the clear and specific language of the provisions of Chapter X and from its legislative history, above discussed, it unquestionably appears that Sec. 236(2), Chapter X of the Act, 11 U.S.C.A. § 636(2), invests this court with jurisdiction to enter an order of adjudication in bankruptcy of a railroad corporation, such as debtor herein, in corporate reorganization proceedings initiated under said chapter by means of an original petition filed pursuant to Sec. 128 thereof, 11 U.S.C.A. § 528, upon the failure to propose, approve or accept a plan of reorganization, if in the opinion of the Judge such adjudication in bankruptcy may be in the interests of creditors and stockholders.

 And as under Sec. 4, Chapter 3, of the general provisions of the Bankruptcy Act, 11 U.S.C.A. § 22, a railroad corporation of said type may not become a bankrupt, the Court being thus divested, thereunder, of jurisdiction to enter an order of adjudication in bankruptcy of any such railroad corporation, *in any proceedings where said general provisions of the act are to apply*, it also follows that the aforesaid provisions of Sec. 4, Chapter 3, of the Act, 11 U.S.C.A. § 22, are palpably and unquestionably inconsistent and in conflict with the provisions of Chapter X, and more particularly with the provisions of Sec. 236(2) thereof, 11 U.S.C.A. § 636(2), and that, therefore, and pursuant to the provisions of Sec. 102, Chapter X of the Act, 11 U.S.C.A. § 502, the said provisions of Sec. 4, Chapter 3, of the Act, 11 U.S.C.A. § 22, are and must be held inapplicable to this proceeding.

This court, therefore, had jurisdiction to enter the order of September 11, 1956 adjudicating the debtor in bankruptcy and the Referee committed no error in his order of December 17, 1956, which so decides.

This opinion shall be effective, nunc pro tunc, as of January 23, 1957, when the order denying the petition for review and affirming the Referee's said order of December 17, 1956 was entered.