CONSUMERS CREDIT RURAL ELECTRIC COOPERATIVE CORPORATION, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14936.

United States Court of Appeals
Sixth Circuit.

July 2, 1963.

476

Philip P. Ardery (of Brown, Ardery, Todd & Dudley), Louisville, Ky., for petitioner.

Fred E. Youngman, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Fred E. Youngman, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before McALLISTER, MILLER and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioner, Consumers Credit Rural Electric Cooperative Corporation, sought a redetermination by the Tax Court of an income tax deficiency determined by the Commissioner for 1957. The material facts, which are not in dispute, are as follows.

The petitioner is a corporation organized under the Kentucky Rural Electrification Enabling Act, Chapter 279 of the Kentucky Revised Statutes. It is a non-stock, non-profit corporation whose membership consists of other rural electric cooperative corporations organized in Kentucky under the same statute. The purpose for which the petitioner was organized was in part: "To promote and encourage the fullest possible use of electric energy by Rural Electric Cooperative members in this state." It is engaged in the financing of electrical appliances and of the installation of electrical systems and water and plumbing systems for customers of the petitioner's members, all of which members are tax exempt rural electric cooperative associations engaged in the distribution of electrical energy to residents of the agricultural areas of Kentucky.

Petitioner's Articles of Incorporation provide that the petitioner shall have no capital stock. However, the members were charged an initial membership fee of $10.00. The petitioner derives its operating capital by the issuance of certificates which it designated as "debentures" and from bank loans. The petitioner issued both 3-year 3½% "debentures" and 5-year 4% "debentures." The "debentures" were specifically subordinated to bank credit, but to no other debts of the petitioner.

The petitioner's method of operation was substantially as follows:

"(a). When a customer of a local member cooperative association desired to finance the purchase of an electrical appliance, or the installation of an electrical system or water or plumbing system, he purchased the appliance from an appliance dealer, or had the system installed or well dug by a contractor. The customer made a down payment and signed a promissory note and conditional sales contract for the balance of the cost. The dealer or contractor then assigned the promissory note and conditional sales contract to the local member cooperative association, which in turn reassigned the same to the petitioner. The petitioner in turn forwarded the balance due on the purchase or contract either directly to the dealer or contractor, or to the local member cooperative

association, which in turn forwarded this amount to the dealer or contractor.

"(b) Repayments of the promissory notes were made by the customer at interest to the local member cooperative association, which in turn remitted the amounts so collected to the petitioner. Normally, the local member cooperative association included the monthly installment due on the note in its regular monthly billing for electric service which it sent to the customer."

As of close of the taxable year 1956, the petitioner's books of account reflected a "net profit" or "net margin" after the payment of "interest" on its "debentures," in the amount of $3,052.44. Within 8½ months after the close of the said taxable year, the petitioner allocated this amount between the member cooperative associations on the basis of the dollar volume of loans made through the member cooperatives, and considered this allocation as "patronage dividends" or "capital credits." This amount was reflected on the petitioner's books of account in a capital credits account which is similar to a surplus account, and was never actually paid to the member cooperatives. On its income tax return for the year 1956, the petitioner excluded this amount from income with the explanatory statement, "Distribution to Members based upon participation."

Petitioner contends (1) that it is an organization exempt from tax under Section 501(c) (12), Internal Revenue Code of 1954, which provides exemption for "Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or *like organizations;* but only if 85 percent or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses." (Emphasis added); (2) that it is entitled to deduct as interest under Section 163, Internal Revenue Code of 1954, the amounts paid by it as interest to holders of its "debentures"; and (3) that in com-

puting the net operating loss carry-over from the year 1956 it was entitled to deduct from income of that year the sum of $3,052.44 allocated on its books to its member cooperative associations as "Distribution to Members based on Participation" but not paid.

The Tax Court rejected all three of these contentions in an opinion reported at Consumers Credit Rural Electric Cooperative Corporation v. Commissioner of Internal Revenue, 37 T.C., No. 18, to which reference is made for its discussion of these issues.

In rejecting petitioner's first contention the Tax Court stated that the petitioner was engaged solely in the business of financing purchases of electric appliances and the installation of electrical systems and water and plumbing systems by the customers of the rural electric cooperatives who were members of the petitioner; that its operation closely resembled that of a commercial bank or finance company rather than that of a cooperative organization; and that in so operating, it was not a "like organization" to mutual ditch or irrigation companies, or mutual or cooperative telephone companies within the meaning of Section 501(c) (12).

Petitioner stresses the fact that it was organized under Kentucky law as a nonprofit, cooperative association and that it members, who were organized under the same law, have been accorded tax exemption under the statute. But the fact that the member cooperatives qualified under the statute doesn't automatically confer tax exemption upon the petitioner who, in order to obtain tax exemption, must also qualify under the statute. Although the petitioner and its members were all organized under the same Kentucky statute, it is the Federal statute, not the Kentucky statute, which gives the exemption. The member cooperatives were primarily engaged in the distribution of electric energy to rural areas. It was this operation which qualified them under the federal statute as a "like organization" to mutual ditch or irrigation companies or mutual or coop-

erative telephone companies. Petitioner's operations were in financing consumer purchases; it was not engaged in the distribution of electric energy to rural areas; and, accordingly, it did not qualify as a "like organization" under the statute.

Petitioner relies upon the ruling of this Court in United States v. Pickwick Electric Membership Corp., 158 F.2d 272, C.A.6th. However, in that case the taxpayer claimed exemption under two sections of the Internal Revenue Code, namely, Section 101(8) and Section 101(10), Internal Revenue Code of 1939. Section 101(10) of the 1939 Code was the same as is Section 501(c) (12) of the 1954 Code, which we are here considering. The exemption which was granted in that case was under Section 101(8) of the 1939 Code, which is now contained in Section 501(c) (4) of the 1954 Code. In granting the exemption under Section 101(8) of the 1939 Code (501(c) (4), 1954 Code) we expressly refrained from expressing an opinion on the exemption claimed under Section 101(10), now carried as Section 501(c) (12) of the 1954 Code. In its petition in the Tax Court to redetermine the deficiency in the present case, petitioner relied upon Section 501(c) (12) of the 1954 Code, which is the only section discussed in the opinion of the Tax Court. Reliance was not placed upon Section 501(c) (4), which was the issue adjudicated in the Pickwick case.

In disallowing the exemption under Section 501(c) (12), we express no opinion as to whether, in view of the ruling in the Pickwick case, the petitioner is entitled to exemption under Section 501(c) (4). Certain factual differences between that case and the present case might make the ruling in the Pickwick case inapplicable to the present case. In any event, the Tax Court did not consider that issue and it is not before us on this review. Helvering v. Wood, 309 U.S. 344, 348–349, 60 S.Ct. 551, 84 L.Ed. 796; Doll v. Glenn, 231 F.2d 186, 190, C.A.6th; Cold Metal Process Co. v. McLouth Steel Corporation, 170 F.2d 369, 380, C.A.6th; Lively v. Elkhorn Coal Co., 206 F.2d 396, 399, C.A.6th.

We concur in the ruling of the Tax Court on this issue for the reasons stated in its opinion.

On the second issue presented to the Tax Court, the Court held that the amounts paid by the petitioner as interest to the holders of its "debentures" did not constitute interest payments "on indebtedness" under Section 163 of the Internal Revenue Act of 1954. This ruling rested upon its finding that the purchase of the "debentures" constituted equity capital rather than loans made to the petitioner. See: Wilbur Security Co. v. Commissioner, 279 F.2d 657, C.A.9th, affirming 31 T.C. 938; Dobkin v. Commissioner, 15 T.C. 31, affirmed, 192 F.2d 392, C.A.2nd.

The facts pertaining to this issue are stated in the opinion of the Tax Court and need not be repeated here.

In making its ruling, the Tax Court pointed out that petitioner's financial business required the use of capital and, in fact, capital was its sole income producing asset. All of this capital, with the exception of an infinitesimal amount paid as membership fees ($140.00 in 1957), came from the issuance of the "debentures" and from bank loans, to which the "debentures" were subordinated. The "debentures" were easily the more important of the two sources and the Tax Court found as a fact that although the "debenture" holders had the right to enforce payment of the principal upon maturity, such enforcement would seriously cripple the petitioner's financing operations. It was also pointed out that there was a close identity between the "debenture" holders and the member rural electric cooperatives.

Although the "debentures" in form contained an unconditional promise to pay at a specified date with interest at a specified rate, we think it was a permissible finding on the part of the Tax Court to place reliance upon substance rather than upon form and to conclude that under all the circumstances

in the case neither the taxpayer nor its member cooperative associations intended such advances to create a bona fide debtor-creditor relationship. Wilbur Security Co. v. Commissioner, supra, 279 F. 2d 657, C.A.9th, affirming 31 T.C. 938. In our opinion, this finding of fact by the Tax Court is not clearly erroneous and, accordingly, must be accepted on this review. Gooding Amusement Co. v. Commissioner, 236 F.2d 159, 165-166, C.A. 6th, cert. denied, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599.

 On the third issue considered by the Tax Court the Court pointed out that the exclusion from income of patronage dividends by nonexempt cooperatives rested upon the principle that the dividends in effect are either rebates to patrons of a part of the price initially paid by them on purchases made through a cooperative purchasing organization, or additions to the prices initially paid by the cooperative to its patrons for products which the patrons had marketed through the cooperative. True patronage dividends are restricted to rebates or refunds on business transactions with its *members*. Any profits made on business transacted with nonmembers, which may be distributed to members are fully taxable. Pomeroy Cooperative Grain Co. v. Commissioner, 31 T.C. 674, affirmed on this issue, 288 F.2d 326, 331, C.A.8th. See Farmers Cooperative Co. v. Birmingham, 86 F.Supp. 201, 212-213, 217-225, 235-238, N.D.Iowa.

The Tax Court ruled against the petitioner on this issue because in its opinion the patronage dividends allocated on its books to its member cooperatives represented a net profit from transactions with purchasers from appliance dealers rather than from transactions with member cooperatives, and that the member cooperative was nothing more than a conduit in carrying out the transaction.

We are of the opinion that this ruling fails to take into consideration the fact that the note executed by the purchaser of an appliance from a dealer was transferred by the dealer to the member cooperative *with recourse*, before the petitioner became a party in the transaction, and that the member cooperative thereafter transferred the note to the petitioner *with recourse*. Petitioner's transaction was with the member cooperative, from whom it purchased the note, not with the nonmember purchaser or dealer. If the maker of the note defaulted there was a liability on the part of the member cooperative to the petitioner, which it might or might not be able to recoup from the dealer, with litigation to enforce its right a possibility. We think this made the member cooperative more than a mere conduit and that the purchase of the note from the member cooperative was a separate transaction between the petitioner and its member cooperative within the meaning of the rule. The ruling of the Tax Court on this issue in the case is reversed.

The decision of the Tax Court is affirmed in part and reversed in part and the case is remanded to that Court for further proceedings consistent with the views expressed herein.